In re:
THOMAS J. CHEK

Debtor(s)

Bankruptcy No.: 18-30006
R.S. No.: RJR-3
Hearing Date: 12/06/18
Time: 9:30 a.m.

## Relief From Stay Cover Sheet

Instructions: Complete caption and Section A for all motions. Complete Section B for mobile homes, motor vehicles, and personal property. Complete Section C for real property. Utilize Section C as necessary. If moving party is not a secured creditor, briefly summarize the nature of the motion in Section D.

(A)  Date Petition Filed: 01/04/18     Chapter: 13

Prior hearings on this obligation: N/A     Last Day to File §523/§727 Complaints: 04/09/18

(B)  Description of personal property collateral (e.g. 1983 Ford Taurus):

Secured Creditor [  ] or lessor [  ]

| | | |
|---|---|---|
| Fair market value: | $_____ | Source of value: _____ |
| Contract Balance: | $_____ | Pre-Petition Default: $_____ |
| Monthly Payment: | $_____ | No. of months: _____ |
| Insurance Advance: | $_____ | Post-Petition Default: $_____ |
| | | No. of months: _____ |

(C)  Description of real property collateral (e.g. Single family residence, Oakland, CA): 900 Arlene Way, Novato, CA  94947-6905
Debtor's

Fair market value: $555,000.00     Source of value: Appraisal     If appraisal, date: 2/11/18

Moving Party's position (first trust deed, second, abstract, etc.): Second DOT

| | | | |
|---|---|---|---|
| Approx. Bal. | $97,643.89 | Pre-Petition Default: | $34,776.50 |
| As of (date): 11/06/18 | | No. of months: | 114 |
| Mo. payment: | $400.02 | Post-Petition Default: | $3,050.43 |
| Notice of Default (date): 08/23/17 | | No. of months: | 9 |
| Notice of Trustee's Sale: 12/05/17 | | Advances Senior Liens: | $N/A |

Specify name and status of other liens and encumbrances, if known (e.g. trust deeds, tax liens, etc.): First Trust Deed, HOA Lien, and Judgment Lien

| Position | Amount | Mo. Payment | Defaults |
|---|---|---|---|
| 1st Trust Deed: Select Portfolio Servicing, Inc. | $552,137.25 | $3,265.08 | $0.00 |
| 2nd Trust Deed: Trojan Capital Investments, LLC | $97,643.89 | $400.02 | $3,050.43 |
| Hillside Park East Homeowners Association: | $60,000.00 | $Unknown | $Unknown |
| Max Kemsley: | $20,000.00 | $Unknown | $Unknown |
| Wells Fargo Bank: | $19,890.40 | $Unknown | $Unknown |
| Costs of Sale (8%) | $43,440.00 | $N/A | $N/A |
| (Total) | $793,111.54 | $3,665.08 | $3,050.43 |

(D)  Other pertinent information: The Motion is filed on the grounds that the Debtor is in default under the post-petition payment obligations on the loan.  The Debtor is not currently being evaluated for loss mitigation options.  The Debtor did not request to be reviewed for loss mitigation options prior to filing his petition for bankruptcy protection.  He did request loss mitigation in August 2018, but did not do so through counsel.  As a result, Trojan declined the request.  Debtor's counsel submitted a request for the Debtor to be reviewed for loss mitigation options on October 10, 2018, prior to the filing of Trojan's Motion for Relief from the Automatic Stay.  Trojan offered the borrower a Loan Modification Agreement. However, the Debtor declined the offer

Dated: 11/14/18

_____
Signature
Rafael R. Garcia-Salgado
Print or Type Name
Attorney for Trojan Capital Investments, LLC

CANB Documents Northern District of California



1 | BURKE, WILLIAMS & SORENSEN, LLP
Richard J. Reynolds, Bar No. 89911
2 | E-mail: rreynolds@bwslaw.com
Rafael R. Garcia-Salgado, Bar No. 283230
3 | E-mail: rgarcia@bwslaw.com
1851 East First Street
4 | Suite 1550
Santa Ana, CA 92705-4067
5 | Telephone: 949.863.3363
Facsimile: 949.863.3350
6
Attorneys for Creditor
7 | TROJAN CAPITAL INVESTMENTS, LLC

8 | UNITED STATES BANKRUPTCY COURT

9 | NORTHERN DISTRICT OF CALIFORNIA

10 | SAN FRANCISCO DIVISION

11

12 | In re | Case No. 18-30006

13 | THOMAS J. CHEK, | Chapter Number: 13

14 | Debtor, | **SECURED CREDITOR TROJAN CAPITAL INVESTMENTS, LLC'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. §362 (REAL PROPERTY)**

15

16

17 | DATE: December 6, 2018
TIME: 9:30 a.m.
18 | CTRM: 17

19

20 | **TO THE HONORABLE DENNIS MONTALI, AND ALL PARTIES IN INTEREST:**

21 | Secured Creditor Trojan Capital Investments, LLC ("Trojan") respectfully moves the

22 | Court pursuant to 11 U.S.C. § 362 (the "Motion") for an order granting relief from the automatic

23 | stay as to the real property of debtor Thomas J. Chek (the "Debtor"), located at 900 Arlene Way,

24 | Novato, CA 94947-6905 (the "Property").

25 | I. **JURISDICTION**

26 | 1. The bankruptcy court has jurisdiction over this proceeding pursuant to 11 U.S.C. §

27 | 362 and 28 U.S.C. § 157. This is a core proceeding pursuant to of 28 U.S.C. § 157(b). Venue is

28 | this Court is proper under the provisions of 28 U.S.C. §§ 1408 and 1409.

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Santa Ana

## II.     SUBJECT PROPERTY

2.     This Motion concerns the Property. The Property is legally described as located in the County of Marin, state of California:

PARCEL ONE:

LOT 96, AS SHOWN UPON THAT CERTAIN MAP ENTITLED "MAP OF HILLSIDE PARK UNIT 2, NOVATO, MARIN COUNTY, CALIFORNIA", FILED FOR RECORD DECEMBER 20, 1979 IN VOLUME 17 OF MAPS, AT PAGE 100, MARIN COUNTY RECORDS.

PARCEL TWO:

AN EXCLUSIVE EASEMENT FOR GARAGE SPACE PURPOSES OVER PARCEL C-96, AND AN EXCLUSIVE EASEMENT FOR PARKING SPACE PURPOSES OVER PARCEL S-96 BOTH AS SHOWN UPON THAT CERTAIN MAP ENTITLED "MAP OF HILLSIDE PARK UNIT 2, NOVATO, MARIN COUNTY, CALIFORNIA", FILED FOR RECORD DECEMBER 20, 1979 IN VOLUME 17 OF MAPS, AT PAGE 100, MARIN COUNTY RECORDS, AND AS DEFINED AND LIMITED BY THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS RECORDED AUGUST 19, 1986 AS RECORDER'S SERIAL NO. 86-044877, AND AN AMENDMENT THERETO RECORDED AUGUST 25, 1986 AS RECORDER'S SERIAL NO. 86-046142, MARIN COUNTY RECORDS.

PARCEL THREE:

RIGHTS AND EASEMENTS FOR INGRESS, EGRESS AND THE USE AND ENJOYMENT OVER COMMON AREAS DESIGNATED B-6, B-7, B-8, B-9 AND B-10, D-7, D-8, D-9, D-10 D-11 AND D-6, AS SHOWN UPON THE MAP ENTITLED "MAP OF HILLSIDE PARK UNIT 2, NOVATO, MARIN COUNTY, CALIFORNIA", FILED FOR RECORD DECEMBER 20, 1979 IN VOLUME 17 OF MAPS, AT PAGE 100, MARIN COUNTY RECORDS, AND AS PROVIDED FOR IN THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS RECORDED AUGUST 19, 1986 AS RECORDER'S SERIAL NO. 86-044877 AND AN AMENDMENT THERETO RECORDED AUGUST 25, 1986 AS RECORDER'S SERIAL NO. 86-046142, MARIN COUNTY RECORDS.

## III.     STATEMENT OF FACTS

### A.     The Loan

3.     On or about August 19, 2005, the Debtor, for valuable consideration, made, executed and delivered to the original holder of Trojan's HELOC, National City Bank, an Equity Reserve Agreement – National Home Equity in the principal sum of $56,450.00 (the "HELOC"). Pursuant to the HELOC, the Debtor is obligated to make monthly principal and interest payments until August 19, 2035, when all outstanding amounts are due and payable.  A true and correct

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SANTA ANA

- 2 -     MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Case: 18-30006    Doc# 84    Filed: 11/14/18    Entered: 11/14/18 17:16:27    Page 3 of 42

copy of the HELOC is attached to Trojan's concurrently filed Declaration in Support of Motion for Relief from Automatic Stay (the "Declaration"), and is incorporated herein by reference.

4. In connection with the HELOC, on or about August 19, 2005, the Debtor made, executed and delivered a Deed of Trust (the "Deed of Trust") granting his original lender, National City Bank, a security interest in that certain real property located at 900 Arlene Way, Novato, CA 94947, which real property is more fully described in the Deed of Trust. The Deed of Trust was recorded on August 20, 2005, in the official Records of Marin County, State of California. A true and correct copy of the Deed of Trust is attached to the Declaration and is incorporated herein by reference.

5. Trojan is entitled to enforce the HELOC under the laws of the state where the real property is located, and is the named beneficiary under the Deed of Trust by way of an assignment which is attached to the concurrently filed Declaration and is incorporated herein by reference.

6. The Debtor is in default of his obligations under the HELOC for failure to make payments as of July 19, 2008. At the time of the bankruptcy filing, the monthly payment amount was $379.04.

7. In January 2018, the Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code. Since the filing, the Debtor is obligated to make all post-petition payments owing on the HELOC directly to Trojan. However, Trojan has not received any post-petition payments.

8. As of November 6, 2018, the total payoff amount for the HELOC is $97,643.89. The total amount owing under the HELOC consists of the principal balance of $55,433.67, accrued interest due in the sum of $26,365.54, late charges in the amount of $4,960.00, and costs and fees in the amount of $10,884.68. Further, Trojan has incurred additional attorneys' fees and costs in bringing the instant Motion.

9. The Property is the Debtor's principal residence.

10. The Property is not necessary for an effective reorganization, as the Debtor does not earn any income from it.

MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Case: 18-30006    Doc# 84    Filed: 11/14/18    Entered: 11/14/18 17:16:27    Page 4 of 42

11.     As a Chapter 13 secured creditor, Trojan does not have, and has not been offered, adequate protection for its interest in the Property, and the passage of time will result in irreparable injury to Trojan's interest in the subject property.

**ARGUMENT**

**IV.     GROUNDS FOR RELIEF FROM STAY – LACK OF EQUITY**

12.     11 U.S.C. § 362(d)(2) provides that relief from the automatic stay shall be granted if the debtor does not have any equity in the property and the property is not necessary to the debtor's reorganization.  In *In re Mikole Developers, Inc.*, 14 B.R. 524, 525 (Bankr. E.D. Pa. 1981), the court stated that in determining whether equity exists in the property for purposes of Section 362(d)(2), all encumbrances are totaled, whether or not all the lienholders have joined in the request for relief from stay. The Ninth Circuit concurred with this view in *Stewart v. Gurley*, 745 F.2d 1194, 1195 (9th Cir. 1984), observing "that 'equity' refers to the difference between the value of the property and all encumbrances upon it." An appropriate cost of sale factor should also be added to determine if the debtor has any equity in the property.  *La Jolla Mortgage Fund v. Rancho El Cajon Associates*, 18 B.R. 283, 289 (Bankr. S.D. Cal. 1982).

13.     "Relief from the automatic stay is governed by 11 U.S.C.  § 362(d). Relief must be granted if the debtor has no equity in the property, and the property is not necessary to an effective reorganization. 11 U.S.C. s 362(d)(2)."  *In re Preuss*, 15 B.R. 896, 897 (B.A.P. 9th Cir. 1981).  Here, pursuant to 11 U.S.C. § 362(d)(2)(A) & (B), cause exists to grant Trojan relief from stay, as the Debtor has no equity in the Property and does not receive any income from the Property.

14.     Comparing the filed information in this case regarding the liens against the Property versus the Property's value, Trojan submits that the Debtor has no equity in the Property. Under a best case scenario for the Debtor based on his appraiser's valuation of the Property [Docket No. 62], Trojan is informed and believes that the equity in the Property is as follows:

///

///

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SANTA ANA

- 4 -                    MOTION FOR RELIEF FROM THE AUTOMATIC STAY

| Debtor's valuation | | $555,000.00 |
|---|---|---|
| Less: | Select Portfolio Servicing, Inc. | $552,137.25 |
| Less: | Trojan's 2nd Trust Deed – Approx. Balance as of October 2018 | $97,643.89 |
| Less | Hillside Park East Homeowners Association | $60,000.00 |
| Less | Max Kemsley | $20,000.00 |
| Less | Wells Fargo Bank | $19,890.40 |
| Less | 8% Costs of Sale | $43,440.00 |
| Total | Debtor's Total Equity in the Subject Property | $-238,111.54 |

15.     As outlined above, the Debtor has no equity in the subject property. This is cause for relief from stay. Case authority dictates that a sizable equity cushion is required to prevent relief from stay. *See, e.g., In re Helionetics, Inc.,* 70 B.R. 433, 440 (Bankr. C.D. Cal. 1987) (20% equity cushion inadequate); *In re Palmer River Realty Inc.,* 26 B.R. 138, 141 (Bankr. D. R.I.1983) ("at least a modest equity cushion required"); *In re Lake Tahoe Land Co., Inc.,* 5 B.R. 34, 37 (Bankr. Nev. 1980) (40% to 50% required); *In re Tucker,* 5 B.R. 180, 183-84 (Bankr. S.D.N.Y. 1980) (7.4% inadequate). Therefore, Trojan is entitled to relief from stay on account of existing encumbrances.

16.     Furthermore, the Debtor has been unable or unwilling to service the debt on the Property for the past ten years. Therefore, Trojan is entitled to relief under 11 U.S.C. § 362(d)(2)(A) & (B).

## V.     GROUNDS FOR RELIEF FROM STAY – CAUSE – ADEQUATE PROTECTION

17.     Pursuant to the provisions of 11 U.S.C. §§ 361 and 362(d)(1), "cause" exists to grant Trojan relief from stay, as its interest in the Property is not protected by an adequate equity cushion. Failure to make post-petition payments in a Chapter 13 case also constitutes cause for relief from stay under Bankruptcy Code Section 362(d)(1). *Ellis v. Parr (In re Ellis),* 60 B.R. 432, 435 (9th Cir. BAP 1985).

18.     Here, the Debtor has not made any pre-petition or post-petition payments on this

Burke, Williams & Sorensen, LLP
Attorneys At Law
Santa Ana

loan in the past ten years, so Trojan has no adequate protection. Under Section 361(1), adequate protection comes in the form of "a cash payment or periodic cash payments."

19.     Trojan submits that the adequate protection in this case requires normal and periodic cash payments, as called for by the HELOC, plus the repayment of any and all delinquent amounts owed to Trojan, including all attorneys' fees and costs incurred in the filing of this Motion.

20.     Trojan is informed and believes that the Debtor is presently unwilling or unable to provide adequate protection to Trojan.  Undersigned counsel provided Debtor's counsel with a reinstatement for the subject loan in July 2018, but no payments or reinstatement has been provided.  Further, the Debtor has not made any payments on the HELOC since 2008. As a result, there is no probability that adequate protection can be afforded to Trojan within a reasonable time. By reason of the foregoing, Trojan is entitled to relief from stay under 11 U.S.C. § 362(d)(1) and (d)(2), based upon the failure of the Debtor to provide adequate protection to Trojan and to make payments.

**VI.     CONCLUSION**

21.     For all of the reasons set forth herein, there is cause for relief from stay including, but not limited to, lack of adequate protection, the Debtor's failure to make the required Deed of Trust payments, and the Debtor's lack of an equity cushion in the Property.

WHEREFORE, Trojan respectfully moves the Court to enter an Order:

1.     Terminating the automatic stay of 11 United States Code § 362, as it applies to the enforcement by Trojan of all of its rights in the Property under the HELOC and the Deed of Trust;

2.     Granting relief from the automatic stay under 11 U.S.C. § 362(d)(1);

///

///

///

BURKE, WILLIAMS & SORENSEN, LLP
ATTORNEYS AT LAW
SANTA ANA

MOTION FOR RELIEF FROM THE AUTOMATIC STAY

3. Granting Trojan (and any successors or assigns) leave to proceed under applicable non-bankruptcy law to enforce the security interest under the HELOC and the Deed of Trust, including any action necessary to foreclose on and obtain possession of the Property;

4. Terminating the co-debtor stay of 11 U.S.C. §1201(a) or §1301(a) as to the co-debtor on the same terms and conditions as to the Debtor.

5. Waiving the 14-day stay prescribed by FRBP 4001(a)(3);

6. That the order be binding and effective despite any conversion of this bankruptcy case under any other chapter of the Bankruptcy Code.

7. Including the attorneys' fees and costs incurred by Trojan for filing the instant Motion in the outstanding balance of the HELOC as allowed under applicable non-bankruptcy law;

8. If relief from stay is not granted, ordering adequate protection; and

9. Granting such other and further relief as the Court deems proper.

Dated:     November 14, 2018     BURKE, WILLIAMS & SORENSEN, LLP

By: _____
Richard J. Reynolds
Rafael R. Garcia-Salgado
Attorneys for Creditor
TROJAN CAPITAL INVESTMENTS, LLC

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SANTA ANA

- 7 -    MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Case: 18-30006   Doc# 84   Filed: 11/14/18   Entered: 11/14/18 17:16:27   Page 8 of 42

1  BURKE, WILLIAMS & SORENSEN, LLP
   Richard J. Reynolds, Bar No. 89911
2  E-mail: rreynolds@bwslaw.com
   Rafael R. Garcia-Salgado, Bar No. 283230
3  E-mail: rgarcia@bwslaw.com
   1851 East First Street
4  Suite 1550
   Santa Ana, CA 92705-4067
5  Telephone: 949.863.3363
   Facsimile: 949.863.3350
6
7  Attorneys for Creditor
   TROJAN CAPITAL INVESTMENTS, LLC

8              UNITED STATES BANKRUPTCY COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                 SAN FRANCISCO DIVISION

11

12  In re                              Case No. 18-30006

13  THOMAS J. CHEK,                    Chapter Number: 13

14          Debtor,                    **DECLARATION OF DON A. MADDEN, III
                                       IN SUPPORT OF SECURED CREDITOR**
15                                     **TROJAN CAPITAL INVESTMENTS,
                                       LLC'S MOTION FOR RELIEF FROM**
16                                     **THE AUTOMATIC STAY UNDER 11
                                       U.S.C. §362 (REAL PROPERTY)**
17
                                       DATE: December 6, 2018
18                                     TIME: 9:30 a.m.
                                       CTRM: 17
19

20

21          I, Don A. Madden, III, declare as follows:

22          1.      I am an authorized signer for Trojan Capital Investments, LLC ("Trojan"). As part

23  of my duties at Trojan, I review loans and/or properties that are involved in litigation. As a result

24  of this position, I have access to Trojan's regularly kept business records relating to such loans

25  and/or properties. I have reviewed the loan documents relating to real property commonly known

26  as 900 Arlene Way, Novato, CA 94947-6905 (the "Property"), and am familiar with the

27  documents attached to my Declaration. Those documents contain entries made in the ordinary

28  course of business. The documents are records of the type Trojan maintains in the course of its

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SANTA ANA

IRV #4811-2155-6346 v1
06837-0115

- 1 -

DECLARATION IN SUPPORT OF MOTION FOR RELIEF
FROM THE AUTOMATIC STAY

Case: 18-30006    Doc# 84    Filed: 11/14/18    Entered: 11/14/18 17:16:27    Page 9 of 42

1  regularly conducted business activity. The documents were created at or about the time the

2  events reflected therein occurred, by persons whose duty it is to record and make such records. If

3  called as a witness in this matter, I am competent to testify of my own personal knowledge, to

4  the best of my recollection, as to the matters set forth in this Declaration. This Declaration is in

5  support of Trojan's concurrently filed Motion for Relief from the Automatic Stay (the

6  "Motion").

7        2.      Trojan is the holder of the Equity Reserve Agreement – National Home Equity

8  dated August 19, 2005 (the "HELOC") between Thomas J. Chek, as borrower (the "Debtor"),

9  and National City Bank, as the original lender. Trojan purchased the HELOC, and it has been

10  endorsed to Trojan. A true and correct copy of the HELOC is attached hereto as **Exhibit 1** and

11  incorporated herein by reference.

12        3.      Trojan is the holder of a second priority Deed of Trust (the "Deed of Trust")

13  securing the HELOC and encumbering the Property. The legal description for the Property is set

14  forth in the Deed of Trust. The Deed of Trust was recorded against the Property on August 20,

15  2005, as Document No. 2005-0066104 in the official records of the Marin County Recorder. A

16  true and correct copy of the Deed of Trust is attached hereto as **Exhibit 2** and incorporated

17  herein by reference. The Court is also requested to take judicial notice of this document pursuant

18  to Fed. R. Evid. 201.

19        4.      Trojan is entitled to enforce the HELOC under the laws of the state where the

20  real property is located, and is the named beneficiary under the Deed of Trust by way of an

21  assignment which is attached to the concurrently filed Declaration and is incorporated herein

22  by reference. True and correct copies of the Assignments are attached as **Exhibit 3** and

23  incorporated herein by reference.

24        5.      Trojan, and no other entity or securitized trust, currently owns the HELOC.

25  ///

26  ///

27  ///

28  ///

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SANTA ANA

- 2 -

DECLARATION IN SUPPORT OF MOTION FOR RELIEF
FROM THE AUTOMATIC STAY

Case: 18-30006    Doc# 84    Filed: 11/14/18    Entered: 11/14/18 17:16:27    Page 10 of
42

6.      The Debtor is in default of his obligations under the HELOC for failure to make payments as of June 22, 2008. The Debtor has not made any pre-petition payments since that time.

7.      The Debtor has made no post-petition payments.

8.      A copy of Trojan's Post-Petition Payment History is attached as **Exhibit 4.**

9.      As of November 6, 2018, the total payoff amount for the HELOC is $97,643.89. The total amount owing under the HELOC consists of the principal balance of $55,433.67, interest due from July 19, 2008 in the sum of $26,365.54, late charges in the amount of $4,960.00, and fees and costs in the amount of $10,884.68. Further, Trojan has incurred additional attorneys' fees and costs in bringing the instant Motion.  I am informed and believe that the Debtor's valuation of the Property is currently $543,000.00, based on his filed Schedule A [Docket No. 12].

9.      As evidenced by Trojan's filed proof of claim, the pre-petition arrears are $34,776.50 [Court's Claim's Register No. 2-1].

///

///

///

///

///

///

///

1    10.    Trojan is not currently evaluating the Debtor for loss mitigation options. The

2    Debtor did not request to be reviewed for loss mitigations options prior to filing his petition for

3    bankruptcy protection. He did request loss mitigation in August 2018, but did not do so through

4    counsel. As a result, Trojan declined the request. Debtor's counsel submitted a request for the

5    Debtor to be reviewed for loss mitigation options on October 10, 2018, prior to the filing of

6    Trojan's Motion for Relief from the Automatic Stay. Trojan offered the borrower a loan

7    modification agreement. However, the Debtor declined the offer.

8

9          Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the

10    United States of America that the foregoing factual statements are true and correct.

11

12

13          Executed this 7TH day of November, 2018, at Newport Beach, California.

14

15                                    _____
                                      Don A. Madden, III
16                                    President
                                      TROJAN CAPITAL INVESTMENTS,
17                                    LLC

18

19

20

21

22

23

24

25

26

27

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
SANTA ANA    Case: 18-30006    Doc# 84    Filed: 11/14/18    Entered: 11/14/18 17:16:27    Page 12 of
                                                     42

- 4 -    DECLARATION IN SUPPORT OF MOTION FOR RELIEF
         FROM THE AUTOMATIC STAY

# Exhibit 1

 **National City.** | EQUITY RESERVE™ AGREEMENT – NATIONAL HOME EQUITY
(Not to be Used for Lines Secured by a Texas Homestead)

Date: 8/19/2005    Account No. REDACTION

You, the undersigned, are opening an Equity Reserve Line of Credit (Line) with National City Bank (Bank) and agree that the following material terms and conditions will apply to your Line.

**Line of Credit.** Your Line is an open-end line of credit which you may use to obtain cash advances (Advances) from time to time for a period of 10 years (9 years 10 months in Connecticut) (Draw Period). If you continue to meet Bank's then current credit and collateral value criteria, at Bank's discretion, Bank will either extend the Draw Period for one or more additional Draw Periods or Bank may refinance your Line on the terms then being offered by Bank for Equity Reserve Lines of Credit. If your Draw Period is not renewed or the Line refinanced, you may repay any outstanding balances during the Repayment Period as provided in the Payment section below

The initial amount of your Line is $ **56,450.00** (Credit Line) You have the option anytime during the Draw Period of this Agreement to create Fixed Rate Locks of all or part of your Line at a fixed rate and for a fixed payment. The Fixed Rate Lock (FRL) balance includes the FRL advance fee Any amount you repay on the Line and/or on an FRL will be again available to you on the Line until the end of the Draw Period. Bank may reduce the amount of your Credit Line under certain conditions described in this Agreement.

**Advances.** You may obtain Advances under your Line by issuing Equity Reserve checks and special FRL checks (each a Check) supplied by Bank, by contacting Customer Service or by way of any other Bank approved plan. Bank will charge your Checks directly against your Line You may make arrangements for an Advance on your Line to pay off any FRL at any time by contacting Customer Service at the address or phone number on your statement. You should notify Bank when you need more Checks The minimum FRL Advance that you can receive using an FRL Check is $5,000. FRL Check Advances will automatically have a 20-year Repayment Term. You may contact Customer Service after a FRL Check posts to your Line to change the Repayment Term to one of the other available terms listed in the Fixed Rate Lock Advances section below, however, FRL Advances changed to another Repayment Term will be subject to finance charges at the annual percentage rate in effect the day the new FRL Repayment Term is applied by Customer Service. FRL Advances for terms other than 20 years may also be obtained by contacting Customer Service instead of by Check. FRL Checks for less than $5,000 will be posted as a Line Advance You should also notify Bank immediately if your Checks are lost or stolen. (Please see the "Stop Payment Orders" section of this Agreement) Your statement will list Checks that have been paid, but the actual paid Checks will not be returned to you. You may request copies of paid Checks from the Bank, and a copying fee may be charged

Bank will issue you a Card or Cards for use with the Line except in Connecticut, New York and Texas and in other states where such access is limited The word Card can mean one or more credit cards or Automated Teller Machine (ATM) cards. You authorize Bank to issue you a Card for use with the Line You may purchase goods or services from merchants who honor the Card. You may obtain Advances from Bank or any other financial institution that honors the Card. You may also obtain Advances by using a Personal Identification Number (PIN) for telephone banking or on-line banking Advances. Bank will charge all Advances to your Line

If you allow someone else to use your Card or PIN and you want to stop such use, you must let Bank know in writing You must notify Bank immediately if your Cards or PIN are lost or stolen, or you believe that some person may be using your Card(s) or PIN without permission. You will not use your Line after notifying Bank of loss, theft or unauthorized use of your Card(s) or PIN You will not be held liable for any unauthorized use of the Card or PIN after you have notified Bank of the loss or theft by phone at 1-800-533-6596 or in writing at National City Card Services, P.O. Box 4092, Kalamazoo, Michigan 49003 (Otherwise you may be liable, but not for more than $50.) Bank may terminate the use of your Card, PIN or Checks if you lose your Card, PIN or Checks two times or more in a twelve-month period. Bank may also terminate the use of your Card or PIN if your new balance exceeds your Credit Line by 2% or if you are over limit for more than one billing cycle

Bank will have no obligation to honor any Advance by any means if the resulting new balance of your Line would exceed your Credit Line; or after the Draw Period ends; or in the event of termination or suspension of your Credit Line under the conditions described in this Agreement, and upon Bank's request you will return Checks and/or Cards Your Line may not be used for Internet lottery, betting or gambling transactions or for any illegal transactions

Charges from foreign merchants and financial institutions may be made in a foreign currency Bank will bill you in U.S Dollars based on the exchange rate on the day Bank settles the transaction, plus any special currency exchange charges. In the case of VISA Accounts. the exchange rate applied to each such transaction is a rate selected by Visa from a range of rates available in wholesale currency markets for the applicable central processing date, which rate may vary from the rate Visa itself receives, or the government-mandated rate in effect for the applicable central processing date. In addition, Bank will charge a foreign transaction fee of 1% of the converted amount. Because of the special charges and possible differences in exchange rates between the time Bank settles and the time you initiated the transaction, the total charge for a foreign transaction may be greater than the cash advance or purchase at the time it was made

**Finance Charge for Line and Fixed Rate Lock Advances and During the Repayment Period.**

a) **Line Advances:** Bank figures the finance charge on your Line by applying the periodic rate to the "average daily balance" of your Line. To get the "average daily balance", Bank takes the beginning balance of the Line each day, adds any new Advances including if applicable, the broker and processing fees, and other debits, and subtracts any payments or credits and unpaid periodic finance charges This gives the daily balance. Then, Bank adds up all the daily balances for the billing cycle and divides the total by the number of days in the billing cycle. This gives the "average daily balance"

Advances are subject to finance charges from the date of transaction to the date payment is posted to the Line The periodic rate of finance charge and the annual percentage rate are subject to change, based on the value of an index The index in effect for each billing cycle will be the "Prime Rate" of interest appearing in the Money Rates Table of The Wall Street Journal published on the first day of your Billing Cycle (or, if not published on that date, the last edition published prior to that date), rounded upward, if necessary, to the nearest .01% (Line Index).

The **ANNUAL PERCENTAGE RATE** is the Line Index plus **1.000** %(Line Margin) The **FINANCE CHARGE** for each billing cycle shall be computed at the annual percentage rate divided by 12. As of **08/15/2005** , the current periodic rate of **FINANCE CHARGE** is **0.625** % per month, which corresponds to an **ANNUAL PERCENTAGE RATE** of **7.500%**

The annual percentage rate and the periodic rate of finance charge may increase if the Line Index increases In the event of an increase, the finance charge will increase and the minimum payment amount may increase. If the minimum payment amount is either 1 5% of the new balance or the total finance charges, an increase or decrease in the annual percentage rate will result in a corresponding increase or decrease in the minimum payment amount.

b) **Fixed Rate Lock Advances:** Bank figures the finance charge on each FRL by applying the periodic rate to the "average daily balance" of the FRL. To get the "average daily balance", Bank takes the beginning balance of the FRL each day and subtracts any payments or credits and unpaid periodic finance charges. This gives the daily balance Then, Bank adds up all the daily balances for the billing cycle and divides the total by the number of days in the billing cycle. This gives the "average daily balance"

Each FRL is subject to finance charges from the date of the transaction until paid in full. The periodic rate of finance charge and the annual percentage rate are determined and fixed on the business day the transaction posts to your Line. The index shall be the highest daily rate for 3 year Treasury notes with constant maturities from the 1st business day through the 11th last business day of the calendar month preceding the month in which the transaction posts to your Line, rounded, if necessary, to the nearest 0 125% (FRL Index). The FRL Index can be found in the Federal Reserve Statistical Release H. 15 at www.federalreserve.gov/releases/h15

The **ANNUAL PERCENTAGE RATE** is the FRL Index plus a margin (FRL Margin). The **ANNUAL PERCENTAGE RATE** for each FRL Repayment Term shall be computed at the annual percentage rate divided by 12. As of **08/15/2005**, the FRL Margin, the current periodic rate of **FINANCE CHARGE** per month and corresponding **ANNUAL PERCENTAGE RATE** for each FRL Repayment Term are listed in the table below

| FRL Repayment Term | FRL Margin | Monthly Periodic Rate of **FINANCE CHARGE** | **ANNUAL PERCENTAGE RATE** |
|---|---|---|---|
| 5-year FRL. 60 monthly payments | 4.500 | 0.698 | 8.375 |
| 10-year FRL. 120 monthly payments | 4.750 | 0.719 | 8.625 |
| 15-year FRL. 180 monthly payments | 5.000 | 0.740 | 8.875 |
| 20-year FRL. 240 monthly payments (automatic term for FRL checks you write) | 5.500 | 0.781 | 9.375 |
| 7-year "Interest Only" FRL. 83 monthly payments of one penny plus finance charges on the FRL balance (including the FRL Advance Fee), followed by a balloon payment of the remaining balance in the 84th month | 4.750 | 0.719 | 8.625 |

c) **Both Line and Fixed Rate Lock Advances:** In no event shall the periodic rate of **FINANCE CHARGE** be more than 1 50% per month or less than 0.25% per month and in no event shall the **ANNUAL PERCENTAGE RATE** be more than 18 00% or less than 3 00% The annual percentage rate includes only interest and not other costs. Your monthly statement will disclose the applicable annual percentage rate for the billing cycle.

d) **Repayment Period.** Any amount outstanding other than FRL's will be converted to a Fixed Rate Lock balance on the last business day of your Draw Period and will be subject to finance charges for a Fixed Rate Lock based on a 240 month Repayment Term for balances of $10,000 or more or a 120 month Repayment Term for balances less than $10,000 as stated in subsections (b) and (c) above. The index value is the highest FRL Index from the 1st business day through the 11th last business day of the calendar month preceding the month in which the Draw Period ends, rounded, if necessary, as provided in subsection (b) above.

**Other Finance Charges.**     A **Broker** fee **FINANCE CHARGE** of $     217.50
A Discount Fee **FINANCE CHARGE** of $     0.00     (0.000 % of Credit Line)
A Processing Fee **FINANCE CHARGE** of $     0.00
An FRL Advance Fee **FINANCE CHARGE** of $50 for each Fixed Rate Lock used

**Other Charges.** In addition to finance charges, the following other charges will apply

- An annual fee of $50 reflected on the monthly statement for the first billing cycle of each year of your Draw Period beginning with the 13th billing cycle, whether or not you obtain Advances under your Line. This fee is not refundable
- A late payment fee of the greater of 10% of the unpaid minimum payment or $40, if Bank does not receive your minimum payment at the address shown on your statement within 10 days of the Due Date. Bank may charge an additional late payment fee for each billing cycle that your Line is past due
- An overlimit fee of $25 whenever you go over your Credit Line. Bank may charge an additional $25 for each billing cycle that you remain over your Credit Line.
- A returned payment fee of $30 if you make a payment on your Line which is returned to Bank unpaid because of insufficient funds, a closed account, stop payment, or any other reason.
- A returned check fee of $30 if you write a Check that Bank dishonors under the "Advances" section of this Agreement.
- A stop payment fee of $30 for the service of stopping payment on a Check and a $30 service fee for renewal of each stop payment order
- A foreign transaction fee of 1% of the transaction amount. This fee is not applicable to transactions in the United States.
- An early termination fee of $ 350.00      if you close your Line within the first 36 months
- A document request fee of $6 per copy for service of providing copies. Bank will not charge you for documents Bank is required by law to give you at no charge
- Any real estate related closing fees due at the closing of your Line as reflected on the HUD1 settlement statement provided to you by the closing agent which is hereby incorporated and made part of this Agreement by this reference

Bank does not lose any of its other rights under this Agreement whether or not it charges late payment or overlimit fees. You also agree that Bank may also charge you a fee, not otherwise enumerated herein, for services that Bank performs for you that you have requested The application of any fee shall not cure the default which initiated the fee

**Security Interests** Your Line will be secured by a mortgage (Mortgage) on your dwelling (Dwelling). If the Dwelling is your primary or secondary residence, you represent and warrant to Bank that at all times during the term of this Agreement your Dwelling, or a minimum of one unit of your multi-unit Dwelling, shall be occupied by you and shall not be used as rental property Bank agrees to waive any security interest in the Dwelling to the extent it secures Advances which may be in excess of your Credit Line. You name Bank as loss payee and beneficiary of the proceeds of, and assign to Bank any unearned premiums of, all insurance connected with your Line. You must not adversely affect Bank's interest in the Dwelling by any action or inaction. You must keep the Dwelling in good condition, promptly pay all mortgages and other liens against the Dwelling, and promptly pay all taxes and assessments on the Dwelling You must not sell or transfer title to the Dwelling without Bank's permission, or use the Dwelling for any illegal purpose

**Property Insurance.** You must keep the Dwelling fully insured against loss or damage on terms that are acceptable to Bank to the extent permitted by law You must carry flood insurance if required by federal law You may obtain property insurance or furnish existing property insurance from anyone that is acceptable to Bank provided the insurer is authorized to do business in the state or jurisdiction where the Dwelling is located or is an eligible surplus lines carrier You agree to furnish Bank with written evidence of such insurance, with Bank named as loss payee and proof of payment of insurance premiums If you fail to do so, Bank may buy insurance to protect Bank's interest and add the premium cost to the unpaid balance of your Line, subject to the same finance charges as Advances against your Line You assign to Bank the proceeds from any such insurance policies up to the unpaid balance of your Line. Bank may apply such proceeds, including any return of unearned premiums and payments for claims under such policies, to reduce the unpaid balance of your Line You irrevocably authorize Bank as your agent and on your behalf to negotiate, settle and release any claim under your insurance and to submit insurance claims for you and to receive and sign your name to any checks or drafts or related papers obtained from insurance companies.

**Tax Deductibility** You should consult a tax advisor regarding the deductibility of interest and charges on your Line.

**Statements** Bank agrees to mail or deliver to you a monthly statement for each billing cycle at the end of which there is a balance which is a debit or credit balance of more than $1 or on which a finance charge has been imposed. The balance is the sum of all outstanding Advance(s), fees, payments, other credits, other charges and debits, and finance charge(s)

REDACTION

NHERA2 (Rev 06/13/2005)

**Payments** Your payments will be due monthly You may pay the entire unpaid balance of your Line and/or your FRL(s) at any time. You are required to pay a minimum payment by the Due Date shown on your statement equal to the sum of the Line Minimum Payment and the FRL Minimum Payment for each FRL in use.

    a) **Line Minimum Payment:** The Line Minimum Payment will equal the periodic finance charges that accrued on the outstanding Line balance during the preceding billing cycle as shown on each monthly statement (Interest Only Minimum Payment)

    b) **The FRL Minimum Payment is:** For all FRL's except the 7 year "Interest Only" FRL, the minimum payment is a fixed payment amount that is sufficient to pay off the FRL including the FRL Advance Fee, at the fixed rate applicable to that FRL calculated based on the number of monthly payments for the applicable FRL Repayment Term as described in the section of this Agreement called "Fixed Rate Lock Advances." If you choose the 7-year "Interest Only" FRL option, the minimum payment is 83 payments of one penny ($.01) plus the finance charges that accrued on the outstanding FRL balance which balance includes the FRL Advance Fee, at the fixed rate applicable to that FRL (as described in the section of this Agreement called "Fixed Rate Lock Advances") during the preceding billing cycle as shown on each monthly statement followed by one payment of the outstanding balance. Any amount still owing at the end of the billing cycle prior to the billing cycle containing the final payment will be added to the final minimum payment due Additional payments on any FRL may be made at any time but you will continue to be obligated to make the fixed payment for the FRL as long as any amount is still owing on the FRL. The amount of any reduction in principal from a payment on an FRL will become available to you on your Line once it is posted, until the end of the Draw Period. If your Draw Period is not renewed then access to the Line will not be available during the Repayment Period

    c) **Repayment Period:** The Minimum Payment may not fully repay the principal that is outstanding by the end of the Draw Period. If your Draw Period is not renewed for an additional term, during the Repayment Period you may continue to make scheduled payments on any FRL balances outstanding at the end of the Draw Period until they are paid in full Additionally, any amount outstanding other than an FRL will be converted to a Fixed Rate Lock without an FRL Advance fee on the last business day of your Draw Period and will be subject to then current finance charges for an FRL of equal Repayment Term as described in the section of this Agreement called "Fixed Rate Lock Advances." The total amount will be required to be repaid in two hundred forty (240) equal monthly payments for balances of $10,000 or more; or one hundred twenty (120) equal monthly payments for balances of less than $10,000. Any amount still owing after two hundred thirty nine (239) billing cycles or after one hundred nineteen (119) billing cycles respectively, will be added to the final minimum payment due.

Payments will be applied in the following order: First, to each FRL on a first in-first out basis for all unpaid periodic finance charges and then to the FRL's principal balance in an amount necessary to amortize the FRL within its amortization schedule, then to all unpaid periodic finance charges on the Line, then to all Other Charges, then to the Line For introductory and promotional offer balances, payments to the Line are applied on the basis of the lowest rate balance first to highest rate balance last. If there are no balances on the Line, overpayments are applied as a prepayment to the FRL(s) on a first in-first out basis If there are no balances on any FRL or on the Line, overpayments are credited to the Line and returned upon request. In order to make additional partial prepayments to an FRL or to prepay an FRL in full without paying off your Line, you must contact Customer Service to make arrangements to do so

**Stop Payment Orders.** We agree to honor a stop payment order against a Check when received from you within a reasonable time prior to payment. A stop payment order becomes effective after we have actually received the order and had a reasonable time to process it, and the order will remain in effect for thirteen months Our acceptance of a stop payment order does not mean that the Check has not yet been paid, and we shall have no liability resulting from the payment of a Check before your stop payment order becomes effective A stop payment order may be renewed for successive periods equal to its original period of effectiveness if we receive a renewal notice prior to the order becoming ineffective.

A stop payment order against a Check must accurately describe it as to date, number, amount, and payee, and must correctly recite your name and the Account number You agree that it is current industry standard to process stop payment orders by means of computer technology Accordingly, your failure to provide the exact identification of Account number and Check number in order to identify the Check to be stopped will result in the Check being paid if presented, and we will not be liable for such payment. Errors in your name or the Account number, or inaccuracies in the description of the number, amount, issue date or payee on your written stop payment order shall relieve us from any liability for any mistaken payment or wrongful dishonor Any errors on our written acknowledgment to you of a stop payment order must be reported by you in writing to our Customer Service Department within 10 calendar days of the written acknowledgment date We shall not be liable for any mistaken payment or wrongful dishonor occurring after the 10-day period, unless errors or inaccuracies are so reported to us within the 10-day period

Before we will release a stop payment order, our Customer Service Department may require the receipt of a written request, signed by you, requesting the withdrawal of the order

In the event we recredit the Account for a paid Check, then you hereby assign to us all rights against third parties. You or any joint account holder may order a stop payment. You agree that we will not be obligated to reimburse you immediately upon notice of alleged wrongful payment, that it is your obligation to prove the fact and amount of damage suffered, and that in no case will we be liable for more than your actual damage.

We shall not be liable for any damages unless we have failed to act in good faith and exercise ordinary care You agree to indemnify us and hold us harmless from any and all expenses incurred or damages suffered by us in honoring a stop payment order

To place a stop payment order, write to National City, Equity Reserve Stop Payment Department, 4661 E. Main Street, Columbus, Ohio 43251-0928

**Termination of Line** Bank can terminate your Line and require you to pay the entire outstanding balance in one payment if you breach a material obligation of this Agreement in that.
- You engage in fraud or material misrepresentation in connection with your Line.
- You do not meet the repayment terms of this Agreement.
- Your action or inaction adversely affects the collateral or Bank's rights in the collateral

To the extent permitted by 11 USC 506, Bank shall be entitled to reasonable court costs and attorneys' fees for independent counsel that Bank hires (unless you are a resident of New Hampshire, in which case we may not recover our attorneys' fees from you) Interest after termination, whether prior to or after judgment by a court of competent jurisdiction, shall accrue upon the outstanding unpaid balance at the rate determined under this Agreement until such balance is paid in full

**Suspension or Reduction of Credit Line** Bank can refuse to make additional extensions of credit or reduce your Line if you breach a material obligation of this Agreement in that.
- The value of the Dwelling securing your Line declines significantly below its present appraised value for purposes of the Credit Line
- Bank reasonably believes you will not be able to meet the repayment requirements due to a material change in your financial circumstances.
- You are in default of a material obligation under this Agreement.
- Government action prevents the Bank from imposing the annual percentage rate provided for or impairs the Bank's security interest such that the value of the interest is less than 120 percent of the Credit Line
- A regulatory agency has notified the Bank that continued Advances would constitute an unsafe or unsound practice.
- The maximum annual percentage rate is reached.

If your Line is suspended and you have used any FRL(s) then at Bank's option Bank may terminate the FRL(s) and transfer any FRL balances to your Line

Bank will give you written notice of any such action and conditions for reinstating your credit privileges Bank may reinstate your credit privileges when the conditions leading to suspension are cured to Bank's satisfaction Bank may require you to request reinstatement of credit privileges when the conditions leading to suspension or reduction of your Credit Line no longer exist. An additional title examination and other documentation may be required to reinstate your Line, and any costs associated with reinstatement will be paid by you where permitted by law

REDACTION

- The index and margin used for this Line if the original index is no longer available.
- A change that you specifically agree to
- A change that benefits you
- An insignificant change.
- Other changes permitted by applicable law

Any change in terms will apply to balances outstanding on the effective date of the change as well as to balances generated thereafter

**Other Provisions.** You shall promptly notify Bank of any change in circumstances which has a substantial adverse effect on your credit. You will furnish Bank with financial statements in a form satisfactory to Bank as Bank may request from time to time. Bank may also require a title examination and/or appraisal from time to time, the cost of which will be paid by you.

If this Agreement is signed by more than one borrower, each of you may draw Checks on the Line or use the Cards, and each and every borrower is jointly and severally liable for all Advances and charges on the Line. With reasonable notice to process the request, any of you may direct Bank to not make further Advances on the Line, however, reinstatement will only be made on the joint request of all of you.

Your rights in your Line may not be assigned. The Mortgage may not be assumed by a subsequent purchaser of the Dwelling. All fees paid to Bank are not refundable

All of Bank's rights under this Agreement are valid to the extent permitted by applicable law. If it is determined for any reason that any part of this Agreement is invalid or unenforceable, this shall not affect the validity or enforcement of any other provision, and this Agreement will then read as if the invalid or unenforceable part were not there.

Bank may delay exercising any of its rights under this Agreement without losing them. We may accept late payments or partial payments without losing any of our rights. If your payment is marked with the words "Paid in Full" or similar language, you must send your payment to National City, 6750 Miller Road, Brecksville, Ohio 44141, Locator No. 7107. If your payment is made to any other address, we may accept the payment without losing any of our rights

You understand that Bank is a national bank located in Ohio, and that Bank's decision to extend the Line to you was made in Ohio. Therefore, this Agreement and your use of the Line, Checks and Cards, shall be governed by and construed in accordance with (a) Federal laws and regulations including but not limited to 12 USC § 85 and (b) the laws of Ohio, to the extent Ohio laws are not preempted by federal laws or regulations, and without regard to conflict of law principles

The annual IRS Form 1098 will be issued only to the first borrower listed on this Agreement at origination and the designation of a borrower as first cannot be changed subsequently

At Bank's option, Bank may designate an electronic or optically imaged reproduction of this Agreement or any other document related to your Loan as an original document and if it does so, the reproduction may be relied on in full by all parties to the same extent as an original

You can change any term of this Agreement only in a writing signed by us.

You agree that, to the extent not prohibited by applicable law, Bank shall not be liable for any damages unless Bank has failed to act in good faith and exercise ordinary care. You further agree that in no event shall Bank be liable for any consequential, indirect or special damages even if Bank has been advised of the possibility of such damages.

From time to time, we may offer you special rates for balance transfer transactions or introductory or promotional offers on your Line. If we do, we will advise you of the annual percentage rates and finance charges associated with the special rate offer, how long they will be in effect, the balances to which they will apply, and other terms of the special rate offer. Any special rate offer will be subject to the terms of the offer and this Agreement.
Bank may provide to others, including but not limited to, consumer credit reporting agencies, information about our transactions and experiences with you. Also, Bank and its affiliates (collectively "National City") may share with each other all information about you that National City has or may obtain for the purposes, among other things, of evaluating credit applications. Under the Fair Credit Reporting Act there is certain credit information that cannot be shared about you (unless you are a business) if you tell National City by writing to National City Corporation, Attention. Office of Consumer Privacy, P.O. Box 4068, Kalamazoo, MI 49009. You must include your name, address, Line (account) number and social security number

You agree that you and Bank have an established business relationship and that, to the extent not prohibited by applicable law, National City may contact you to offer you products and services that National City thinks may be of interest to you. Such contacts are not unsolicited, and National City may contact you by telephone and with an automated dialing and announcing device or by fax at any telephone number you have given to us including the telephone number on your application, or by email or other form of electronic communication and we may monitor telephone calls with you to assure quality service

In this Agreement, the term "affiliates" means current and future affiliates of Bank, including, but not limited to, the following National City Corporation subsidiaries: National City Bank of Indiana, National City Bank of the Midwest, National City Bank of Pennsylvania, National City Bank of Southern Indiana, National City Home Loan Services, Inc., First Franklin Financial Corporation, National City Bank of Kentucky, National City Mortgage Co. and National City Mortgage Services Co

If you believe that we have information about you that is inaccurate or that we have reported or may report to a credit reporting agency information about you that is inaccurate, please notify us of the specific information that you believe is inaccurate by writing to National City, P.O. Box 94982, Cleveland, Ohio 44101, Attn. Credit Bureau Disputes, Locator 7113.

NHERA4 (Rev 06/13/05)

REDACTION

**NOTICES.** The following notices are given by Bank only to the extent not inconsistent with 12 U.S.C Section 85 and related regulations and opinions, and/or the choice of law provision set forth herein (with respect to which Bank expressly reserves all rights). You acknowledge receipt of the following notices before becoming obligated

**If the Dwelling is located in California:** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property

**If the Dwelling is located in Colorado:** If your payments are received after the due date, even if received before the date a late fee applies, you may owe additional and substantial money at the end of the credit transaction and there may be little or no reduction of principal. This is due to the accrual of daily interest until a payment is received.

**If the dwelling is located in Connecticut:** Your initial Draw Period will be 9 years 10 months and cannot be renewed for additional draw periods.

**If the Dwelling is located in Florida.** FLORIDA DOCUMENTARY STAMP TAX IN THE AMOUNT REQUIRED BY LAW HAS BEEN PAID OR WILL BE PAID DIRECTLY TO THE DEPARTMENT OF REVENUE, AND FLORIDA DOCUMENTARY STAMPS HAVE BEEN PLACED ON THE TAXABLE INSTRUMENTS AS REQUIRED BY CHAPTER 201, FLORIDA STATUTES

**If the Dwelling is located in Maryland:** We elect Subtitle 9, Credit Grantor Open End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland

**If the Dwelling is located in Minnesota.** If the amount of this Loan is $100,000 or more, we elect Minn. Stat. § 334.01

**If the Dwelling is located in Missouri.** Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

**If the Dwelling is located in New York:** YOU SHOULD CHECK WITH YOUR LEGAL ADVISOR AND WITH OTHER MORTGAGE LIEN HOLDERS AS TO WHETHER ANY PRIOR LIENS CONTAIN ACCELERATION CLAUSES WHICH WOULD BE ACTIVATED BY A JUNIOR ENCUMBRANCE.

DEFAULT IN THE PAYMENT OF THIS LOAN AGREEMENT MAY RESULT IN THE LOSS OF THE PROPERTY SECURING THE LOAN. UNDER FEDERAL LAW, YOU MAY HAVE THE RIGHT TO CANCEL THIS AGREEMENT. IF YOU HAVE THIS RIGHT, THE CREDITOR IS REQUIRED TO PROVIDE YOU WITH A SEPARATE WRITTEN NOTICE SPECIFYING THE CIRCUMSTANCES AND TIMES UNDER WHICH YOU CAN EXERCISE THIS RIGHT.

**If the Dwelling is located in North Dakota.** THIS OBLIGATION MAY BE THE BASIS FOR A PERSONAL ACTION AGAINST THE PROMISOR OR PROMISORS IN ADDITION TO OTHER REMEDIES ALLOWED BY LAW.

**If the dwelling is located in Oregon.** NOTICE TO THE BORROWER: Do not sign this loan agreement before you read it. The loan agreement may provide for the payment of a penalty if you wish to repay the loan prior to the date provided for repayment in the loan agreement.

**If the Dwelling is located in Texas:** THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

**If the Dwelling is located in Vermont.** NOTICE TO CO-SIGNER: YOUR SIGNATURE ON THIS NOTE MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU

**COPY RECEIVED.** You agree to be legally bound to all provisions of this Agreement. You acknowledge receipt of a completed copy of this Agreement, including important information below regarding your rights to dispute billing errors ("Your Billing Rights")

SARAH W CHEK
TYPE OR PRINT NAME     X _Sarah W Chek_ SIGNATURE

THOMAS J CHEK SR
TYPE OR PRINT NAME     PLEASE INITIAL     X _Thomas J Chek_ SIGNATURE

TYPE OR PRINT NAME     X _____ SIGNATURE

TYPE OR PRINT NAME     X _____ SIGNATURE

Address of Dwelling     900 ARLENE WAY NOVATO , California 94947

REDACTION

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us In Case of Errors or Questions About your Bill**
If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information.
* Your name and Line number
* The dollar amount of the suspected error
* Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your savings or checking account, you can stop payment on any amount you think is wrong. To stop the payment, your letter must reach us three business days before the automatic payment is scheduled to occur.

**Your Rights and Our Responsibilities After We Receive Your Written Notice**
We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your Credit Line. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

**Special Rule for Credit Card Purchases**
If you have a problem with the quality of property or services that you purchased with your Card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right.

(a)     You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and

(b)     The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services

©2005 National City Corporation

REDACTION

# ALLONGE TO Equity Reserve Line of Credit AGREEMENT

**PNC Account #:** REDACTION

Allonge to one certain Home Equity Line of Credit Agreement dated on or about: <u>8/19/2005</u>

and executed by: <u>Sarah W Chek and Thomas J Chek</u>
**Debtor(s)**

With a Credit Line of **$** <u>56450.00</u>

Debtor Address: <u>900 Arlene Way, Novato, CA 94947</u>

Pay to the order of: <u>US Mortgage Resolution LLC</u>

Without Recourse

## PNC Bank N.A., successor by merger to National City Bank

By: _Eileen M Kovach_

**Eileen M. Kovach**

**Assistant Vice President**

**5/5/2015**

# ALLONGE TO NOTE

Original Loan Amount: $56,450.00
Note Date: 9/19/2005
Borrower: Sarah W. Chek and Thomas J. Chek
Property Address: 900 ARLENE WAY, NOVATO, CA 94947

**PAY TO THE ORDER OF**

Trinity Financial Services, LLC
2618 San Miguel Dr., Ste. 303
Newport Beach, CA 92660

**WITHOUT RECOURSE**

US Mortgage Resolution LLC
150 S. Warner Rd, Suite 220
King of Prussia, PA 19406

By: US Mortgage Resolution LLC

By: _____

Name: Thomas D. Dunkel

Title: Managing Member

**LOST NOTE AFFIDAVIT**

The undersigned, being duly sworn, does hereby state under oath that:

(i)    The undersigned is the <u>Assistant Vice President</u> (title) of PNC Bank, National Association, which is authorized to deliver this Lost Note Affidavit on behalf of Citigroup HELOC Trust 2006-NCB1 (the "Seller") in its capacity as servicer pursuant to that certain Servicing Agreement dated May 23, 2006, by and among PNC Bank, National Association, as successor in interest to National City Bank, as Servicer; Citigroup HELOC Trust 2006-NCB1, as Issuer; Citibank, N.A., as Securities Administrator; and U.S. Bank National Association, as Indenture Trustee.

(ii)    Seller is the lawful owner of amounts payable under the following described note or credit agreement  (the "Note"):

    Date: 8/19/05
    Loan No. REDACTION
    Borrower(s): Sarah W Chek and Thomas J Chek
    Original Principal Amount or Credit Limit: $56450.00

(iii)    Seller is the lawful owner of the Note.

(iv)    The original Note was not located after a thorough and diligent search.

(v)    Attached hereto is a true and correct copy of the Note, endorsed, on an allonge, "Pay to the order of <u>US Mortgage Resolution LLC</u>, without recourse".

(vi)    This Affidavit is intended to be relied on by US Mortgage Resolution LLC.

EXECUTED THIS <u>5th</u> day of <u>May</u>, <u>2015</u>.

By:  Eileen M. Kovach
Name: <u>Eileen M. Kovach</u>
Title: <u>Assistant Vice President</u>
Date: <u>5/5/15</u>

# Exhibit 2

This document was prepared by: RORRI BLACKWELL,
6750 Miller Road, Brecksville, OH 44141

Please return this document after recording to:
NCB, CLS BRECKSVILLE
LOCS, LOCATOR 7120
P.O. BOX 5570
CLEVELAND, OH 44101

REDACTION

2005-0066104

Recorded | REC FEE 27.00
Official Records
County Of
Marin
JOAN C. THAYER
Recorder

08:05AM 20-Aug-2005 | Page 1 of

_____ State of California _____ _____ Space Above This Line For Recording Data _____

# DEED OF TRUST
### (With Future Advance Clause)

APN : 160-601-38

1. **DATE AND PARTIES.** The date of this Deed of Trust (Security Instrument) is **August 19, 2005** and the parties, their addresses and tax identification numbers, if required, are as follows:
   TRUSTOR: **SARAH W CHEK and THOMAS J CHEK SR**
   **900 ARLENE WAY, NOVATO, California, 94947**

   [ ] If checked, refer to the attached Addendum incorporated herein, for additional Trustors, their signatures and acknowledgments.
   TRUSTEE: **NATIONAL CITY BANK**

   LENDER: **NATIONAL CITY BANK**

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Trustor's performance under this Security Instrument, Trustor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, the following described property: *See attached Exhibit A*

The property is located in **Marin** at
_____
*(County)*
**900 ARLENE WAY** , **NOVATO** , California **94947**
*(Address)* *(City)* *(ZIP Code)*

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed $ **56,450.00** . This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
   A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. *(Include items such as borrowers' names, note or contract amounts, interest rates (whether variable), maturity dates, etc.)*

**Maturity Date: 8/19/2035**

**CALIFORNIA - HOME EQUITY LINE OF CREDIT DEED OF TRUST** (NOT FOR FNMA, FHLMC, FHA OR VA USE)

*(page 1 of 6)*

*Experian* © 1994 Bankers Systems, Inc., St Cloud, MN Form OCP-REDT-CA 3/10/2004

VMP-C465(CA) (0403) 01     VMP Mortgage Solutions, Inc (800)521-7291

Case: 18-30006   Doc# 84   Filed: 11/14/18   Entered: 11/14/18 17:16:27   Page 24 of 42

B.  All future advances from Lender to Trustor or other future obligations of Trustor to Lender under any promissory note, contract or guaranty, or other evidence of debt executed by Trustor in favor of Lender after this Security Instrument if this Security Instrument is specifically referenced on the evidence of other debt. If more than one person signs this Security Instrument, each Trustor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Trustor, or any one or more Trustor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument.

C.  All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

D.  Performance of every obligation in this Security Instrument (including any subsequent instrument amending this Security Instrument) and any instrument now or later evidencing or securing any indebtedness secured by this Security Instrument.

In the event that Lender fails to provide any necessary notice of the right of rescission with respect to any additional indebtedness secured under paragraph B of this Section, Lender waives any subsequent security interest in the Trustor's principal dwelling that is created by this Security Instrument (but does not waive the security interest for the debts referenced in paragraph A of this Section).

5.  **DEED OF TRUST COVENANTS.** Trustor agrees that the covenants in this section are material obligations under the Secured Debt and this Security Instrument. If Trustor breaches any covenant in this section, Lender may refuse to make additional extensions of credit and reduce the credit limit. By not exercising either remedy on Trustor's breach, Lender does not waive Lender's right to later consider the event a breach if it happens again.

**Payments.** Trustor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

**Prior Security Interests.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Trustor agrees to make all payments when due and to perform or comply with all covenants. Trustor also agrees not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written approval.

**Claims Against Title.** Trustor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Trustor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Trustor's payment. Trustor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Trustor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Trustor may have against parties who supply labor or materials to maintain or improve the Property.

**Property Condition, Alterations and Inspection.** Trustor will keep the Property in good condition and make all repairs that are reasonably necessary. Trustor shall not commit or allow any waste, impairment, or deterioration of the Property. Trustor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Trustor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Trustor will notify Lender of all demands, proceedings, claims, and actions against Trustor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Trustor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Trustor will in no way rely on Lender's inspection.

**Authority to Perform.** If Trustor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Trustor appoints Lender as attorney in fact to sign Trustor's name or pay any amount necessary for performance. Lender's right to perform for Trustor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument.

**Leaseholds; Condominiums; Planned Unit Developments.** Trustor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Trustor will perform all of Trustor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

**Condemnation.** Trustor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Trustor authorizes Lender to intervene in Trustor's name in any of the above described actions or claims. Trustor assigns to Lender the



Expere® © 1994 Bankers Systems, Inc., St. Cloud, MN Form OCP-REDT-CA 3/10/2004

VMP®-C465(CA) (0403) 01

proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**Insurance.** Trustor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Trustor subject to Lender's approval, which shall not be unreasonably withheld. If Trustor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Trustor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Trustor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Trustor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Trustor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Trustor. If the Property is acquired by Lender, Trustor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

**Financial Reports and Additional Documents.** Trustor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Trustor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Trustor's obligations under this Security Instrument and Lender's lien status on the Property.

6. **WARRANTY OF TITLE.** Trustor warrants that Trustor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, convey and sell the Property to Trustee, in trust, with power of sale. Trustor also warrants that the Property is unencumbered, except for encumbrances of record.

7. **DUE ON SALE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, a transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

8. **DEFAULT.** Trustor will be in default if any of the following occur:

**Fraud.** Any Consumer Borrower engages in fraud or material misrepresentation in connection with the Secured Debt that is an open end home equity plan.

**Payments.** Any Consumer Borrower on any Secured Debt that is an open end home equity plan fails to make a payment when due.

**Property.** Any action or inaction by the Borrower or Trustor occurs that adversely affects the Property or Lender's rights in the Property. This includes, but is not limited to, the following: (a) Trustor fails to maintain required insurance on the Property; (b) Trustor transfers the Property; (c) Trustor commits waste or otherwise destructively uses or fails to maintain the Property such that the action or inaction adversely affects Lender's security; (d) Trustor fails to pay taxes on the Property or otherwise fails to act and thereby causes a lien to be filed against the Property that is senior to the lien of this Security Instrument; (e) a sole Trustor dies; (f) if more than one Trustor, any Trustor dies and Lender's security is adversely affected; (g) the Property is taken through eminent domain; (h) a judgment is filed against Trustor and subjects Trustor and the Property to action that adversely affects Lender's interest; or (i) a prior lienholder forecloses on the Property and as a result, Lender's interest is adversely affected.

**Executive Officers.** Any Borrower is an executive officer of Lender or an affiliate and such Borrower becomes indebted to Lender or another lender in an aggregate amount greater than the amount permitted under federal laws and regulations.

9. **REMEDIES ON DEFAULT.** In addition to any other remedy available under the terms of this Security Instrument, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Trustor is in default. In some instances, federal and state law will require Lender to provide Trustor with notice of the right to cure, or other notices and may establish time schedules for foreclosure actions.

At the option of the Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. Lender shall be entitled to, without limitation, the power to sell the Property.

Experͤ © 1994 Bankers Systems, Inc., St Cloud, MN Form OCP-REDT-CA 3/10/2004
VMP®-C465(CA) (0403) 01

Case: 18-30006    Doc# 84    Filed: 11/14/18    Entered: 11/14/18 17:16:27    Page 26 of 42

If Lender elects to foreclose by exercise of the power of sale, Lender will declare the entire Secured Debts due and payable by delivering to Trustee this Security Instrument and any evidence of the Secured Debts, receipts and evidence of expenditures made and secured, as Trustee requires. When the legally prescribed time passes after Trustee or Lender duly records a notice of default, the Trustee, Lender or other person authorized to take the sale will give a notice of sale as required by law and will cause the Property to be sold at the time and place fixed in the notice of sale. Lender may rescind any notice of default at any time before the Property's sale. Rescission will occur when Lender executes and records a notice of rescission that cancels any prior notice of default and any related acceleration of the Secured Debts. Lender's rescission will not waive any default then existing or subsequently occurring or preclude Lender exercising its remedies, including the power of sale, at another time.

The Property can be sold as a whole or in separate parcels and in any order that Trustee decides. The Property will be sold to the highest bidder for cash in lawful money of the United States, payable at sale time. The Property can be sold to anyone, including Trustor, Trustee or Lender. Trustee may postpone the sale of any part of the Property by public announcement at the time and place of this sale and afterwards at the time fixed by the preceding postponement. Upon any sale of the Property, Trustee will make and deliver a special or limited warranty deed that conveys the property sold to the purchaser or purchasers. Under this special or limited warranty deed, Trustee will covenant that Trustee has not caused or allowed a lien or an encumbrance to burden the Property and that Trustee will specially warrant and defend the Property's title to the purchaser or purchasers at the sale against all lawful claims and demand of all persons claiming by, through or under Trustee. The deed's recital of facts will be conclusive proof of the truthfulness of these facts.

The proceeds from the Property's sale will be applied to the sale expenses, Trustee's expenses, Lender's attorneys' fees due on Trustor's default, sums that Trustee or Lender paid for procuring a title search of the Property's title subsequent to the execution of this Security Instrument, all outstanding amounts due under this Security Instrument and the remainder to anyone legally entitled to the remaining amounts due.

The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Trustor's default, Lender does not waive Lender's right to later consider the event a default if it happens again.

10. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** If Trustor breaches any covenant in this Security Instrument, Trustor agrees to pay all expenses Lender incurs in performing such covenants (including but not limited to advances and expenses described in the DEED OF TRUST COVENANTS section) or protecting its security interest in the Property. Such expenses include, but are not limited to, fees incurred for inspecting, preserving, or otherwise protecting the Property and Lender's security interest. These expenses are payable on demand and will bear interest from the date of payment until paid in full at the highest rate of interest in effect as provided in the terms of the Secured Debt. Trustor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. To the extent permitted by the United States Bankruptcy Code, Trustor agrees to pay the reasonable attorneys' fees Lender incurs to collect the Secured Debt as awarded by any court exercising jurisdiction under the Bankruptcy Code. This Security Instrument shall remain in effect until released. Trustor agrees to pay for any recordation costs of such release.

11. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law.

Trustor represents, warrants and agrees that:

    A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

    B. Except as previously disclosed and acknowledged in writing to Lender, Trustor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

Experé © 1994 Bankers Systems, Inc , St Cloud, MN Form OCP-REDT-CA 3/10/2004

VMP®-C465(CA) (0403) 01



C. Trustor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Trustor shall take all necessary remedial action in accordance with any Environmental Law.

D. Trustor shall immediately notify Lender in writing as soon as Trustor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

12. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Trustor will not be required to pay to Lender funds for taxes and insurance in escrow.

13. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Trustor signs this Security Instrument but does not sign an evidence of debt, Trustor does so only to mortgage Trustor's interest in the Property to secure payment of the Secured Debt and Trustor does not agree to be personally liable on the Secured Debt. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Trustor and Lender.

14. **SEVERABILITY; INTERPRETATION.** This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

15. **SUCCESSOR TRUSTEE.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee without any other formality than the designation in writing. The successor trustee, without conveyance of the Property, shall succeed to all the title, power and duties conferred upon Trustee by this Security Instrument and applicable law.

16. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one trustor will be deemed to be notice to all trustors. Lender and Trustor request that copies of any notice of default or notice of sale under a superior security instrument be sent to Lender and Trustor at the addresses listed in the DATE AND PARTIES section.

17. **WAIVERS.** Except to the extent prohibited by law, Trustor waives all appraisement or marshalling of assets relating to the Property.

18. **SPOUSE'S SEPARATE PROPERTY.** Any Trustor who is a married person expressly agrees that recourse may be had against his or her separate property.

19. **LINE OF CREDIT.** The Secured Debt includes a revolving line of credit. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

20. **APPLICABLE LAW.** This Security Instrument is governed by the laws as agreed to in the Secured Debt, except to the extent required by the laws of the jurisdiction where the Property is located, and applicable federal laws and regulations.

21. **RIDERS.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]

☐ Assignment of Leases and Rents   ☐ Other   ........ ........ ............................... ........ ......

22. ☐ **ADDITIONAL TERMS.**

Express © 1994 Bankers Systems, Inc , St Cloud, MN Form OCP-REDT-CA 3/10/2004
VMP -C465(CA)  (0403) 01

Case: 18-30006   Doc# 84   Filed: 11/14/18   Entered: 11/14/18 17:16:27   Page 28 of 42

23. **REQUEST FOR NOTICE.** In accordance with Section 2924b, Civil Code, request is hereby made that a copy of any notice of default and a copy of any notice of sale under the deed of trust (or mortgage) recorded .................... , .................... , in book .................... page .................... , records of .................... County, (or filed for record with recorder's serial number .................... , .................... County) California, executed by .................... as trustor (or mortgagor) in which .................... , is named as beneficiary (or mortgagee) and .................... as trustee be mailed to:

Name .................... at
Address ....................

NOTICE: A copy of any notice of default and of any notice of sale will be sent only to the address contained in this recorded request. If your address changes, a new request must be recorded.
(Include the requester's name, by the signer, among those acknowledging below, or use a separate acknowledgment form.)

**Signature** on behalf of the requester named above:

Signature ....................

**SIGNATURES:** By signing below, Trustor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Trustor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

_Sarah W Chek_ 8-23-05          _Thomas J Chek_ 8-23-05
(Signature)              (Date)          (Signature)              (Date)
       **SARAH W CHEK**                      **THOMAS J CHEK SR**

**ACKNOWLEDGMENT:**
STATE OF _CALIFORNIA_ , COUNTY OF _MARIN_ } ss.
On this _23 rd_ day of _August, 2005_ before me _WAYNE LANG_ ,
a notary public, personally appeared
.... _SARAH W. CHEK AND THOMAS J. CHEK_ ....

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

WAYNE LANG
Commission # 1358450
Notary Public - California
Marin County
My Comm. Expires May 26, 2006

(Seal)

Signature .................... _Wayne Lang_
Name (typed or printed) .... _WAYNE LANG_
My commission expires: .... _MAY 26, 2006_

---

**REQUEST FOR FULL RECONVEYANCE**

**To Trustee:** The undersigned is the holder of the note or notes secured by this Deed of Trust, which was recorded in the office of the Recorder of .................... County, State of California, in book .................... page .................... of official records. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.
Dated: ....................

---

Assessor's Identification Number

Expere® © 1994 Bankers Systems, Inc , St Cloud, MN Form OCP-REDT-CA 3/10/2004
VMP®-C465(CA) (0403) 01

*(page 6 of 6)*

# EXHIBIT "A"

The land referred to in this policy is situated in the **State of California, County of MARIN, City of NOVATO,** and described as follows:

PARCEL ONE:

LOT 96, AS SHOWN UPON THAT CERTAIN MAP ENTITLED "MAP OF HILLSIDE PARK UNIT 2, NOVATO, MARIN COUNTY, CALIFORNIA", FILED FOR RECORD DECEMBER 20, 1979 IN VOLUME 17 OF MAPS, AT PAGE 100, MARIN COUNTY RECORDS.

PARCEL TWO:

AN EXCLUSIVE EASEMENT FOR GARAGE SPACE PURPOSES OVER PARCEL C-96, AND AN EXCLUSIVE EASEMENT FOR PARKING SPACE PURPOSES OVER PARCEL S-96 BOTH AS SHOWN UPON THAT CERTAIN MAP ENTITLED "MAP OF HILLSIDE PARK UNIT 2, NOVATO, MARIN COUNTY, CALIFORNIA", FILED FOR RECORD DECEMBER 20, 1979 IN VOLUME 17 OF MAPS, AT PAGE 100, MARIN COUNTY RECORDS, AND AS DEFINED AND LIMITED BY THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS RECORDED AUGUST 19, 1986 AS RECORDER'S SERIAL NO. 86-044877, AND AN AMENDMENT THERETO RECORDED AUGUST 25, 1986 AS RECORDER'S SERIAL NO. 86-046142, MARIN COUNTY RECORDS.

PARCEL THREE:

RIGHTS AND EASEMENTS FOR INGRESS, EGRESS AND THE USE AND ENJOYMENT OVER COMMON AREAS DESIGNATED B-6, B-7, B-8, B-9 AND B-10, D-7, D-8, D-9, D-10 D-11 AND D-6, AS SHOWN UPON THE MAP ENTITLED "MAP OF HILLSIDE PARK UNIT 2, NOVATO, MARIN COUNTY, CALIFORNIA", FILED FOR RECORD DECEMBER 20, 1979 IN VOLUME 17 OF MAPS, AT PAGE 100, MARIN COUNTY RECORDS, AND AS PROVIDED FOR IN THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS RECORDED AUGUST 19, 1986 AS RECORDER'S SERIAL NO. 86-044877 AND AN AMENDMENT THERETO RECORDED AUGUST 25, 1986 AS RECORDER'S SERIAL NO. 86-046142, MARIN COUNTY RECORDS.

APN #: **160-601-38**

REDACTION

# Exhibit 3



REDACTION
2017-0023830

Recorded          1 RPL REC          32.00
Official Records
County of
Marin
RICHARD N. BENSON
Assessor-Recorder
County Clerk

01:50PM 15 Jun 2015   Page 1 of 1

Prepared By: Janice Smith
PNC Bank National Association, successor by merger to National City Bank
6750 Miller Road,
Brecksville, OH 44141

When Recorded Return To:
Trinity Financial Services, LLC (MAIN)
Leah Whitworth
P.O. Box 458
Kimberling City, MO 65686
Ref#: REDACTION

Ref # REDACTION

### ASSIGNMENT OF MORTGAGE

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, **PNC Bank National Association, successor by merger to National City Bank, 6750 Miller Road Brecksville, OH 44141** ("Assignor") hereby assigns and transfers to <u>**US Mortgage Resolution LLC whose address is 150 S Warner Rd, Suite 220, King of Prussia, PA 19406**</u> ("Assignee"), without recourse, representation, warranty or guaranty, express or implied, of any kind or nature, all of Assignor's rights, title and interest in and to that certain Mortgage or Deed of Trust:

Executed by: **Sarah W Chek and Thomas J Chek**
Recorded on: **8/30/2005**          Mortgage Amount: **$ 56450.00**
In the Recorder's Office of: **Marin, California**
Instrument #: **2005-0066104**          Book: **N/A**          Page(s): **N/A**
Property Address: **900 Arlene Way, Novato, CA 94947**

Date: 5/5/2015
**PNC Bank National Association, successor by merger to National City Bank**

Signature: _Stephanie Kibler_
Stephanie Kibler, Assistant Vice President

### ACKNOWLEDGMENT

STATE OF OHIO                    )
                                 ) SS:
COUNTY OF CUYAHOGA               )

On the <u>5th</u> day of <u>May</u> in the year <u>2015</u>, before me, the Undersigned, a Notary Public for the said County and State, personally appeared <u>**Stephanie Kibler**</u> respectively of <u>**PNC Bank National Association, successor by merger to National City Bank**</u>. Personally known to me or proved to me on the basis of satisfactory evidence to be the Individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that they are <u>**Assistant Vice President**</u> that he/she/they executed the same in his/her/their capacity(ies),and that by his/her/their signature(s) on the instrument,the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary: Angela M Subin
My Commission Expires: Sept 21, 2019



REDACTION
2017-0023831
Recorded    REC FEE    12.00
Official Records
County of
Marin
RICHARD N. BENSON
Assessor-Recorder
County Clerk
2:06PM 15 Jun 2017    Page 1 of

**When Recorded Return To:**
Trinity Financial Services, LLC (MAIN)
Leah Whitworth
P.O. Box 458
Kimberling City, MO 65686
Ref#: REDACTION

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# ASSIGNMENT OF MORTGAGE

Parcel #:

For value received, the undersigned, hereby grants, assigns and transfers to assignee: **Trinity Financial Services, LLC, 2618 San Miguel Dr., Ste. 303 Newport Beach, CA 92660**, all beneficial interest under that certain Mortgage dated: 9/19/2005.

Mortgagor(s): **Sarah W. Chek and Thomas J. Chek**

In the amount of $56,450.00, recorded 8/30/2005 as Instrument #: 2005-0066104 in Book/Volume: N/A Page: N/A of the Official Records of MARIN County, State of CA, describing the land therein:

Property Address: **900 ARLENE WAY, NOVATO, CA 94947**

Together with the Note therein described or referenced to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Mortgage.

Assignor:
**US Mortgage Resolution LLC, 150 S. Warner Rd, Suite 220, King of Prussia, PA 19406**

By: _____        _____
Name: Thomas D. Dunkel                    Witness: Aaron Jones
Title: Managing Member

COMMONWEALTH OF: Pennsylvania
COUNTY OF: Montgomery
On 05/15/2015, before me, TREVOR DEHAAS Notary Public of the County and State aforesaid, certified that THOMAS D. DUNKEL, MANAGING MEMBER and authorized signor, personally appeared before me this day and acknowledged the execution of the foregoing instrument.

Witness my hand and stamp,

Trevor DeHaas

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
TREVOR DEHAAS
Notary Public
UPPER MERION TWP; MONTGOMERY COUNTY
My Commission Expires Sep 23, 2017



SIRI
MH

REDACTION

**2018-0020644**

| | | |
|---|---|---|
| Recorded<br>Official Records<br>County of<br>Marin<br>RICHARD N. BENSON<br>Assessor-Recorder<br>County Clerk<br><br>06:31AM 11-Jun-2018 | REC FEE | 14.00 |
| | SB2 HOUSING | 75.00 |
| | DA FRAUD FEE | 10.00 |
| | SO<br>Page 1 of 1 | |

**Recording Requested By:**
Trinity Financial Services, LLC

**When Recorded Mail To:**
Trinity Financial Services, LLC
P.O. Box 458
Kimberling City , MO, 65686

REDACTION

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Loan #: REDACTION
CA/MARIN

Assignment Prepared on: May 17, 2018

For Value Received, **Trinity Financial Services, LLC**, whose address is 2618 SAN MIGUEL DR., SUITE 303, NEWPORT BEACH, CA, 92660 **(herein "Assignor")** hereby grant, sell, assign, transfer and convey to **Trojan Capital Investments, LLC**, whose address is 2618 SAN MIGUEL DR. STE 316, NEWPORT BEACH, CA, 92660 **(herein "Assignee")** all interest under that certain Deed of Trust Dated: 8/19/2005, in the amount of $56,450.00, executed by SARAH W CHEK AND THOMAS J CHEK to NATIONAL CITY BANK and Recorded: 8/20/2005, Instrument #: 2005-0066104 in MARIN County, State of California and all rights accrued or to accrue under said Deed of Trust.

Property Address: 900 ARLENE WAY, NOVATO, CA, 94947

Trinity Financial Services, LLC

On: May 17, 2018

By: *Kaleena Ogo*

Name: Kaleena Ogo
Title: Assistant Vice President

State of MISSOURI
County of STONE

On May 17, 2018, before me, Jessica Brown, a Notary Public in and for STONE County, in the State of MISSOURI, personally appeared Kaleena Ogo, Assistant Vice President, Trinity Financial Services, LLC, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

*Jessica Brown*

Jessica Brown
Notary Expires: 3/31/2022 / #: 14599617

NOTARY
SEAL
NOTARY PUBLIC OF MISSOURI

JESSICA BROWN
My Commission Expires
March 31, 2022
Stone County
Commission #14599617

CA/MARIN

# Exhibit 4



REDACTED

**THOMAS J. CHEK**
**900 ARLENE WAY**
**NOVATO, CA 94947**

### Payment History

| | Payment Information | | | | | Payment Applied to | | | | | | Balance After Funds Received or Charges Incurred | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Payment Due Date | Interest Rate | Scheduled Payment | Accrued Interest | Amount Received | Date Received | Principal | Interest | Charges | Reserve | Charges Incurred | Description of Charges | Unpaid Principal Balance | Accrued Interest | Late Charges | Reserve Balance |
| 7/19/2008 | 6.000% | $ 282.48 | $ 282.48 | $ - | N/A | $ 55,433.67 | 6.000% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 282.48 | $ 40.00 | $ - |
| 8/19/2008 | 6.000% | $ 282.48 | $ 282.48 | $ - | N/A | $ 55,433.67 | 6.000% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 564.97 | $ 80.00 | $ - |
| 9/19/2008 | 6.000% | $ 273.37 | $ 273.37 | $ - | N/A | $ 55,433.67 | 6.000% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 838.34 | $ 120.00 | $ - |
| 10/19/2008 | 5.500% | $ 258.94 | $ 258.94 | $ - | N/A | $ 55,433.67 | 5.500% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 1,097.28 | $ 160.00 | $ - |
| 11/19/2008 | 5.000% | $ 227.81 | $ 227.81 | $ - | N/A | $ 55,433.67 | 5.000% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 1,325.09 | $ 200.00 | $ - |
| 12/19/2008 | 4.250% | $ 200.09 | $ 200.09 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 1,525.19 | $ 240.00 | $ - |
| 1/19/2009 | 4.250% | $ 200.09 | $ 200.09 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 1,725.28 | $ 280.00 | $ - |
| 2/19/2009 | 4.250% | $ 180.73 | $ 180.73 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 1,906.01 | $ 320.00 | $ - |
| 3/19/2009 | 4.250% | $ 200.09 | $ 200.09 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 2,106.10 | $ 360.00 | $ - |
| 4/19/2009 | 4.250% | $ 193.64 | $ 193.64 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 2,299.74 | $ 400.00 | $ - |
| 5/19/2009 | 4.250% | $ 200.09 | $ 200.09 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 2,499.83 | $ 440.00 | $ - |
| 6/19/2009 | 4.250% | $ 193.64 | $ 193.64 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 2,693.47 | $ 480.00 | $ - |
| 7/19/2009 | 4.250% | $ 200.09 | $ 200.09 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 2,893.56 | $ 520.00 | $ - |
| 8/19/2009 | 4.250% | $ 200.09 | $ 200.09 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 3,093.65 | $ 560.00 | $ - |
| 9/19/2009 | 4.250% | $ 193.64 | $ 193.64 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 3,287.29 | $ 600.00 | $ - |
| 10/19/2009 | 4.250% | $ 200.09 | $ 200.09 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 3,487.39 | $ 640.00 | $ - |
| 11/19/2009 | 4.250% | $ 193.64 | $ 193.64 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 3,681.02 | $ 680.00 | $ - |
| 12/19/2009 | 4.250% | $ 200.09 | $ 200.09 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 3,881.12 | $ 720.00 | $ - |
| 1/19/2010 | 4.250% | $ 200.09 | $ 200.09 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 4,081.21 | $ 760.00 | $ - |
| 2/19/2010 | 4.250% | $ 180.73 | $ 180.73 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 4,261.94 | $ 800.00 | $ - |
| 3/19/2010 | 4.250% | $ 200.09 | $ 200.09 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 4,462.03 | $ 840.00 | $ - |
| 4/19/2010 | 4.250% | $ 193.64 | $ 193.64 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 4,655.67 | $ 880.00 | $ - |
| 5/19/2010 | 4.250% | $ 200.09 | $ 200.09 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 4,855.76 | $ 920.00 | $ - |
| 6/19/2010 | 4.250% | $ 193.64 | $ 193.64 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 5,049.40 | $ 960.00 | $ - |
| 7/19/2010 | 4.250% | $ 200.09 | $ 200.09 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 5,249.49 | $ 1,000.00 | $ - |
| 8/19/2010 | 4.250% | $ 200.09 | $ 200.09 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 5,449.59 | $ 1,040.00 | $ - |
| 9/19/2010 | 4.250% | $ 193.64 | $ 193.64 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 5,643.22 | $ 1,080.00 | $ - |
| 10/19/2010 | 4.250% | $ 200.09 | $ 200.09 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 5,843.32 | $ 1,120.00 | $ - |
| 11/19/2010 | 4.250% | $ 193.64 | $ 193.64 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 6,036.95 | $ 1,160.00 | $ - |
| 12/19/2010 | 4.250% | $ 200.09 | $ 200.09 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 6,237.05 | $ 1,200.00 | $ - |
| 1/19/2011 | 4.250% | $ 200.09 | $ 200.09 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 6,437.14 | $ 1,240.00 | $ - |
| 2/19/2011 | 4.250% | $ 180.73 | $ 180.73 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 6,617.87 | $ 1,280.00 | $ - |
| 3/19/2011 | 4.250% | $ 200.09 | $ 200.09 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 6,817.96 | $ 1,320.00 | $ - |
| 4/19/2011 | 4.250% | $ 193.64 | $ 193.64 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 7,011.60 | $ 1,360.00 | $ - |
| 5/19/2011 | 4.250% | $ 200.09 | $ 200.09 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 7,211.69 | $ 1,400.00 | $ - |
| 6/19/2011 | 4.250% | $ 193.64 | $ 193.64 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 7,405.33 | $ 1,440.00 | $ - |
| 7/19/2011 | 4.250% | $ 200.09 | $ 200.09 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 7,605.42 | $ 1,480.00 | $ - |
| 8/19/2011 | 4.250% | $ 200.09 | $ 200.09 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 7,805.52 | $ 1,520.00 | $ - |
| 9/19/2011 | 4.250% | $ 193.64 | $ 193.64 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 7,999.15 | $ 1,560.00 | $ - |
| 10/19/2011 | 4.250% | $ 200.09 | $ 200.09 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 8,199.25 | $ 1,600.00 | $ - |
| 11/19/2011 | 4.250% | $ 193.64 | $ 193.64 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 8,392.89 | $ 1,640.00 | $ - |
| 12/19/2011 | 4.250% | $ 200.09 | $ 200.09 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 8,592.98 | $ 1,680.00 | $ - |
| 1/19/2012 | 4.250% | $ 200.09 | $ 200.09 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 8,793.07 | $ 1,720.00 | $ - |
| 2/19/2012 | 4.250% | $ 187.18 | $ 187.18 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 8,980.25 | $ 1,760.00 | $ - |
| 3/19/2012 | 4.250% | $ 200.09 | $ 200.09 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 9,180.35 | $ 1,800.00 | $ - |
| 4/19/2012 | 4.250% | $ 193.64 | $ 193.64 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 9,373.99 | $ 1,840.00 | $ - |
| 5/19/2012 | 4.250% | $ 200.09 | $ 200.09 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 9,574.08 | $ 1,880.00 | $ - |
| 6/19/2012 | 4.250% | $ 193.64 | $ 193.64 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 9,767.72 | $ 1,920.00 | $ - |
| 7/19/2012 | 4.250% | $ 200.09 | $ 200.09 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 9,967.81 | $ 1,960.00 | $ - |
| 8/19/2012 | 4.250% | $ 200.09 | $ 200.09 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 10,167.90 | $ 2,000.00 | $ - |



| | Payment Information | | | | | Payment Applied to | | | | | | | Balance After Funds Received or Charges Incurred | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/19/2012 | 4.250% | $ 193.64 | $ 193.64 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 10,361.54 | $ 2,040.00 | $ - |
| 10/19/2012 | 4.250% | $ 200.09 | $ 200.09 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 10,561.63 | $ 2,080.00 | $ - |
| 11/19/2012 | 4.250% | $ 193.64 | $ 193.64 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 10,755.27 | $ 2,120.00 | $ - |
| 12/19/2012 | 4.250% | $ 200.09 | $ 200.09 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 10,955.36 | $ 2,160.00 | $ - |
| 1/19/2013 | 4.250% | $ 200.09 | $ 200.09 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 11,155.46 | $ 2,200.00 | $ - |
| 2/19/2013 | 4.250% | $ 180.73 | $ 180.73 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 11,336.19 | $ 2,240.00 | $ - |
| 3/19/2013 | 4.250% | $ 200.09 | $ 200.09 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 11,536.28 | $ 2,280.00 | $ - |
| 4/19/2013 | 4.250% | $ 193.64 | $ 193.64 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 11,729.92 | $ 2,320.00 | $ - |
| 5/19/2013 | 4.250% | $ 200.09 | $ 200.09 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 11,930.01 | $ 2,360.00 | $ - |
| 6/19/2013 | 4.250% | $ 193.64 | $ 193.64 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 12,123.65 | $ 2,400.00 | $ - |
| 7/19/2013 | 4.250% | $ 200.09 | $ 200.09 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 12,323.74 | $ 2,440.00 | $ - |
| 8/19/2013 | 4.250% | $ 200.09 | $ 200.09 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 12,523.83 | $ 2,480.00 | $ - |
| 9/19/2013 | 4.250% | $ 193.64 | $ 193.64 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 12,717.47 | $ 2,520.00 | $ - |
| 10/19/2013 | 4.250% | $ 200.09 | $ 200.09 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 12,917.56 | $ 2,560.00 | $ - |
| 11/19/2013 | 4.250% | $ 193.64 | $ 193.64 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 13,111.20 | $ 2,600.00 | $ - |
| 12/19/2013 | 4.250% | $ 200.09 | $ 200.09 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 13,311.29 | $ 2,640.00 | $ - |
| 1/19/2014 | 4.250% | $ 200.09 | $ 200.09 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 13,511.39 | $ 2,680.00 | $ - |
| 2/19/2014 | 4.250% | $ 180.73 | $ 180.73 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 13,692.12 | $ 2,720.00 | $ - |
| 3/19/2014 | 4.250% | $ 200.09 | $ 200.09 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 13,892.21 | $ 2,760.00 | $ - |
| 4/19/2014 | 4.250% | $ 193.64 | $ 193.64 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 14,085.85 | $ 2,800.00 | $ - |
| 5/19/2014 | 4.250% | $ 200.09 | $ 200.09 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 14,285.94 | $ 2,840.00 | $ - |
| 6/19/2014 | 4.250% | $ 193.64 | $ 193.64 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 14,479.58 | $ 2,880.00 | $ - |
| 7/19/2014 | 4.250% | $ 200.09 | $ 200.09 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 14,679.67 | $ 2,920.00 | $ - |
| 8/19/2014 | 4.250% | $ 200.09 | $ 200.09 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 14,879.76 | $ 2,960.00 | $ - |
| 9/19/2014 | 4.250% | $ 193.64 | $ 193.64 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 15,073.40 | $ 3,000.00 | $ - |
| 10/19/2014 | 4.250% | $ 200.09 | $ 200.09 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 15,273.49 | $ 3,040.00 | $ - |
| 11/19/2014 | 4.250% | $ 193.64 | $ 193.64 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 15,467.13 | $ 3,080.00 | $ - |
| 12/19/2014 | 4.250% | $ 200.09 | $ 200.09 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 15,667.23 | $ 3,120.00 | $ - |
| 1/19/2015 | 4.250% | $ 200.09 | $ 200.09 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 15,867.32 | $ 3,160.00 | $ - |
| 2/19/2015 | 4.250% | $ 180.73 | $ 180.73 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 16,048.05 | $ 3,200.00 | $ - |
| 3/19/2015 | 4.250% | $ 200.09 | $ 200.09 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 16,248.14 | $ 3,240.00 | $ - |
| 4/19/2015 | 4.250% | $ 193.64 | $ 193.64 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 16,441.78 | $ 3,280.00 | $ - |
| 5/19/2015 | 4.250% | $ 200.09 | $ 200.09 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 16,641.87 | $ 3,320.00 | $ - |
| 6/19/2015 | 4.250% | $ 193.64 | $ 193.64 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 16,835.51 | $ 3,360.00 | $ - |
| 7/19/2015 | 4.250% | $ 200.09 | $ 200.09 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 17,035.60 | $ 3,400.00 | $ - |
| 8/19/2015 | 4.250% | $ 200.09 | $ 200.09 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 17,235.69 | $ 3,440.00 | $ - |
| 9/19/2015 | 4.250% | $ 343.26 | $ 193.64 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 17,429.33 | $ 3,480.00 | $ - |
| 10/19/2015 | 4.250% | $ 343.26 | $ 200.09 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 17,629.43 | $ 3,520.00 | $ - |
| 11/19/2015 | 4.250% | $ 343.26 | $ 193.64 | $ - | N/A | $ 55,433.67 | 4.250% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 17,823.06 | $ 3,560.00 | $ - |
| 12/19/2015 | 4.500% | $ 350.62 | $ 211.86 | $ - | N/A | $ 55,433.67 | 4.500% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 18,034.93 | $ 3,600.00 | $ - |
| 1/19/2016 | 4.500% | $ 350.62 | $ 211.86 | $ - | N/A | $ 55,433.67 | 4.500% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 18,246.79 | $ 3,640.00 | $ - |
| 2/19/2016 | 4.500% | $ 350.62 | $ 198.19 | $ - | N/A | $ 55,433.67 | 4.500% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 18,444.98 | $ 3,680.00 | $ - |
| 3/19/2016 | 4.500% | $ 350.62 | $ 211.86 | $ - | N/A | $ 55,433.67 | 4.500% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 18,656.85 | $ 3,720.00 | $ - |
| 4/19/2016 | 4.500% | $ 350.62 | $ 205.03 | $ - | N/A | $ 55,433.67 | 4.500% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 18,861.88 | $ 3,760.00 | $ - |
| 5/19/2016 | 4.500% | $ 350.62 | $ 211.86 | $ - | N/A | $ 55,433.67 | 4.500% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 19,073.74 | $ 3,800.00 | $ - |
| 6/19/2016 | 4.500% | $ 350.62 | $ 205.03 | $ - | N/A | $ 55,433.67 | 4.500% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 19,278.77 | $ 3,840.00 | $ - |
| 7/19/2016 | 4.500% | $ 350.62 | $ 211.86 | $ - | N/A | $ 55,433.67 | 4.500% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 19,490.63 | $ 3,880.00 | $ - |
| 8/19/2016 | 4.500% | $ 350.62 | $ 211.86 | $ - | N/A | $ 55,433.67 | 4.500% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 19,702.49 | $ 3,920.00 | $ - |
| 9/19/2016 | 4.500% | $ 350.62 | $ 205.03 | $ - | N/A | $ 55,433.67 | 4.500% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 19,907.52 | $ 3,960.00 | $ - |
| 10/19/2016 | 4.500% | $ 350.62 | $ 211.86 | $ - | N/A | $ 55,433.67 | 4.500% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 20,119.38 | $ 4,000.00 | $ - |
| 11/19/2016 | 4.500% | $ 350.62 | $ 205.03 | $ - | N/A | $ 55,433.67 | 4.500% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 20,324.41 | $ 4,040.00 | $ - |
| 12/19/2016 | 4.750% | $ 357.75 | $ 223.63 | $ - | N/A | $ 55,433.67 | 4.750% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 20,548.05 | $ 4,080.00 | $ - |
| 1/19/2017 | 4.750% | $ 357.75 | $ 223.63 | $ - | N/A | $ 55,433.67 | 4.750% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 20,771.68 | $ 4,120.00 | $ - |
| 2/19/2017 | 4.750% | $ 357.75 | $ 201.99 | $ - | N/A | $ 55,433.67 | 4.750% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 20,973.67 | $ 4,160.00 | $ - |
| 3/19/2017 | 5.000% | $ 364.88 | $ 235.40 | $ - | N/A | $ 55,433.67 | 5.000% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 21,209.07 | $ 4,200.00 | $ - |
| 4/19/2017 | 5.000% | $ 364.88 | $ 227.81 | $ - | N/A | $ 55,433.67 | 5.000% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 21,436.88 | $ 4,240.00 | $ - |
| 5/19/2017 | 5.000% | $ 364.88 | $ 235.40 | $ - | N/A | $ 55,433.67 | 5.000% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 21,672.29 | $ 4,280.00 | $ - |
| 6/19/2017 | 5.250% | $ 372.00 | $ 239.20 | $ - | N/A | $ 55,433.67 | 5.250% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 21,911.49 | $ 4,320.00 | $ - |
| 7/19/2017 | 5.250% | $ 372.00 | $ 247.17 | $ - | N/A | $ 55,433.67 | 5.250% | $ 40.00 | $ - | $ 40.00 | Late | $ | 55,433.67 | $ 22,158.66 | $ 4,360.00 | $ - |



| | Payment Information | | | | | Payment Applied to | | | | | | Balance After Funds Received or Charges Incurred | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8/19/2017 | 5.250% | $ 372.00 | $ 247.17 | $ - | N/A | $ 55,433.67 | 5.250% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 22,405.83 | $ 4,400.00 | $ - |
| 9/19/2017 | 5.250% | $ 372.00 | $ 239.20 | $ - | N/A | $ 55,433.67 | 5.250% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 22,645.03 | $ 4,440.00 | $ - |
| 10/19/2017 | 5.250% | $ 372.00 | $ 247.17 | $ - | N/A | $ 55,433.67 | 5.250% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 22,892.21 | $ 4,480.00 | $ - |
| 11/19/2017 | 5.500% | $ 379.04 | $ 239.20 | $ - | N/A | $ 55,433.67 | 5.500% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 23,131.41 | $ 4,520.00 | $ - |
| 12/19/2017 | 5.500% | $ 379.04 | $ 258.94 | $ - | N/A | $ 55,433.67 | 5.500% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 23,390.35 | $ 4,560.00 | $ - |
| 1/19/2018 | 5.500% | $ 379.04 | $ 258.94 | $ - | N/A | $ 55,433.67 | 5.500% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 23,649.29 | $ 4,600.00 | $ - |
| 2/19/2018 | 5.500% | $ 379.04 | $ 233.88 | $ - | N/A | $ 55,433.67 | 5.500% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 23,883.18 | $ 4,640.00 | $ - |
| 3/19/2018 | 5.500% | $ 379.04 | $ 258.94 | $ - | N/A | $ 55,433.67 | 5.500% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 24,142.12 | $ 4,680.00 | $ - |
| 4/19/2018 | 5.750% | $ 386.04 | $ 261.98 | $ - | N/A | $ 55,433.67 | 5.750% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 24,404.10 | $ 4,720.00 | $ - |
| 5/19/2018 | 5.750% | $ 386.04 | $ 270.71 | $ - | N/A | $ 55,433.67 | 5.750% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 24,674.82 | $ 4,760.00 | $ - |
| 6/19/2018 | 6.000% | $ 393.05 | $ 273.37 | $ - | N/A | $ 55,433.67 | 6.000% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 24,948.19 | $ 4,800.00 | $ - |
| 7/19/2018 | 6.000% | $ 393.05 | $ 282.48 | $ - | N/A | $ 55,433.67 | 6.000% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 25,230.67 | $ 4,840.00 | $ - |
| 8/19/2018 | 6.000% | $ 393.05 | $ 282.48 | $ - | N/A | $ 55,433.67 | 6.000% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 25,513.16 | $ 4,880.00 | $ - |
| 9/19/2018 | 6.000% | $ 393.05 | $ 273.37 | $ - | N/A | $ 55,433.67 | 6.000% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 25,786.53 | $ 4,920.00 | $ - |
| 10/19/2018 | 6.250% | $ 400.02 | $ 294.25 | $ - | N/A | $ 55,433.67 | 6.250% | $ 40.00 | $ - | $ 40.00 | Late | $ 55,433.67 | 26,080.78 | $ 4,960.00 | $ - |
| 11/19/2018 | 6.250% | $ 400.02 | $ 284.76 | $ - | N/A | $ 55,433.67 | 6.250% | $ - | $ - | $ - | Late | $ 55,433.67 | 26,365.54 | $ 4,960.00 | $ - |

| | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|
| Principal: | $ 55,433.67 | $ - | $ 55,433.67 |
| Accrued interest: | $ 23,390.35 | $ 2,975.19 | $ 26,365.54 |
| Late charges | $ 4,560.00 | $ 400.00 | $ 4,960.00 |
| Costs (attorney's fees, foreclosure fees, other costs): | $ 10,884.68 | $ - | $ 10,884.68 |
| Advances (property taxes, insurance): | $ - | $ - | $ - |
| Less suspense account or partial balance paid: | $ - | $ - | $ - |
| **TOTAL CLAIM as of 11/19/2018** | $ 94,268.70 | $ 3,375.19 | $ 97,643.89 |

# Exhibit 5

| | |
|---|---|
| Debtor 1 | **Thomas J. Chek** |
| | First Name      Middle Name      Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name      Middle Name      Last Name |
| United States Bankruptcy Court for the: | NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION |
| Case number (if known) | **18-30006** |

■ Check if this is an amended filing

## Official Form 106D
## Schedule D: Creditors Who Have Claims Secured by Property      12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

☑ Yes. Fill in all of the information below.

### Part 1:    List All Secured Claims

**2. List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor 's name.

| | | Column A | Column B | Column C |
|---|---|---|---|---|
| | | **Amount of claim** Do not deduct the value of collateral. | **Value of collateral that supports this claim** | **Unsecured portion** If any |
| **2.1** **Hillside Park East Homeowners Ass.** Creditor's Name | Describe the property that secures the claim: **900 Arlene Way, Novato, CA 94947-6905 Debtor's Residence/Real Property Community Property** | $60,000.00 | $543,000.00 | $60,000.00 |

**500 Alfred Nobel Dr Hercules, CA 94547-1838**
Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
■ Disputed

**Who owes the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
■ At least one of the debtors and another

■ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)    **HOA Dues**

Date debt was incurred    **December 2017**      Last 4 digits of account number    **4675**

| | | | | |
|---|---|---|---|---|
| **2.2** **Max Kemsley** Creditor's Name | Describe the property that secures the claim: **900 Arlene Way, Novato, CA 94947-6905 Debtor's Residence/Real Property Community Property** | $20,000.00 | $543,000.00 | $20,000.00 |

**80 E Sir Francis Drake Blvd Ste 3B Larkspur, CA 94939-1709**
Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)

Software Copyright (c) 2018 CINGroup - www.cincompass.com

�True At least one of the debtors and another

☑ Check if this claim relates to a community debt

☐ Judgment lien from a lawsuit

☑ Other (including a right to offset)  **Deed of Trust**

Date debt was incurred  **December 2017**

Last 4 digits of account number  **1513**

---

| 2.3 | **Select Portfolio Services** | | $551,128.00 | $543,000.00 | $8,128.00 |
|---|---|---|---|---|---|

Creditor's Name

**10401 Deerwood Park Blvd
Jacksonville, FL 32256-5007**

Number, Street, City, State & Zip Code

**Describe the property that secures the claim:**

**900 Arlene Way, Novato, CA 94947-6905
Debtor's Residence/Real Property Community Property**

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☑ At least one of the debtors and another

☑ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☑ Other (including a right to offset)  **Mortgage**

Date debt was incurred  **December 2017**

Last 4 digits of account number  **2123**

---

| 2.4 | **Toyota Motor Credit Corp.** | | $23,805.00 | $21,012.00 | $2,793.00 |
|---|---|---|---|---|---|

Creditor's Name

**5005 N River Blvd NE
Cedar Rapids, IA 52411-6634**

Number, Street, City, State & Zip Code

**Describe the property that secures the claim:**

**2014 Mercedes-Benz GLK-Class**

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☑ Other (including a right to offset)  **Car Loan**

Date debt was incurred  **November 2017**

Last 4 digits of account number  **7949**

---

| 2.5 | **Trinity Financial Services, LLC** | | $83,532.10 | $543,000.00 | $0.00 |
|---|---|---|---|---|---|

Creditor's Name

**2618 San Miguel Dr Ste 303
Newport Beach, CA 92660-5437**

Number, Street, City, State & Zip Code

**Describe the property that secures the claim:**

**900 Arlene Way, Novato, CA 94947-6905
Debtor's Residence/Real Property Community Property**

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☑ Disputed

---

Official Form 106D    Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**    page 2 of 3

| Debtor 1 | Thomas J. Chek | | | Case number (if known) | 18-30006 |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

**Who owes the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
■ At least one of the debtors and another

■ **Check if this claim relates to a community debt**

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)   **Second Mortgage**

| Date debt was incurred | **September 2017** | Last 4 digits of account number | **2617** |
|---|---|---|---|

| 2.6 | **Wells Fargo Bank** | Describe the property that secures the claim: | $19,890.40 | $543,000.00 | $19,890.40 |
|---|---|---|---|---|---|
| | Creditor's Name | **900 Arlene Way, Novato, CA 94947-6905 Debtor's Residence/Real Property Community Property** | | | |

**PO Box 51193
Los Angeles, CA
90051-5493**

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
■ At least one of the debtors and another

■ **Check if this claim relates to a community debt**

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
■ Judgment lien from a lawsuit
☐ Other (including a right to offset)   _____

| Date debt was incurred | **December 2017** | Last 4 digits of account number | **0305** |
|---|---|---|---|

| Add the dollar value of your entries in Column A on this page. Write that number here: | **$758,355.50** |
|---|---|
| If this is the last page of your form, add the dollar value totals from all pages. Write that number here: | **$758,355.50** |

**Part 2:** List Others to Be Notified for a Debt That You Already Listed

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

☐ Name, Number, Street, City, State & Zip Code
**Special Default Services, Inc.
17100 Gillette Ave
Irvine, CA 92614-5603**

On which line in Part 1 did you enter the creditor?   **2.5**

Last 4 digits of account number   **2617**

☐ Name, Number, Street, City, State & Zip Code
**Special Default Services, Inc.
17272 Red Hill Ave
Irvine, CA 92614-5628**

On which line in Part 1 did you enter the creditor?   **2.5**

Last 4 digits of account number   **2617**

☐ Name, Number, Street, City, State & Zip Code
**Spiwak & Iezza LLP
555 Marin St # 140
Thousand Oaks, CA 91360-4103**

On which line in Part 1 did you enter the creditor?   **2.6**

Last 4 digits of account number   **0305**

Software Copyright (c) 2018 CINGroup - www.cincompass.com